BARKLEY COMPANY OF ARIZONA, PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 6954-85.          Filed July 9, 1987.

*Peter C. Guild, Max K. Boyer,* and *Richard C. Smith,* for
the petitioner.
*Patricia Beary,* for the respondent.

OPINION

GERBER, *Judge*: Petitioner, following the trial and before
submission of briefs, moved to exclude a document that
respondent had offered at trial, which the Court had
conditionally received, leaving the parties to address the
question of admissibility on brief. The parties have pre-
sented their legal arguments in the motion and objection to
same, and we deem it appropriate to rule upon the
admissibility of the document, preliminary to the filing of
briefs addressing the substantive issue(s). The substantive
issue(s) in this case involves whether petitioner is entitled to
a stepped-up basis in realty in connection with a series of
transactions in a related corporate group. Upon advice of
petitioner's tax advisors, realty was sold in an attempt to
raise capital, following a series of corporate transactions.
Respondent, in reacting to the form of transaction, disal-
lowed petitioner's use of a stepped-up basis.

On March 25, 1985, petitioner filed a petition in this
Court and, in part, argues that we should disregard the
form and look to the substance of the transaction.[1] On July

[1]On Aug. 29, 1985, petitioner filed an "Amendment to Petition."

3, 1985, petitioner and others instituted a suit against their tax advisors in an Arizona State court by means of a complaint sounding in "Contract, Tort and Breach of Fiduciary Duty." At issue here is the admissibility into evidence of the complaint filed in that proceeding, "Exhibit P" (hereinafter referred to as malpractice complaint).

Respondent argues that: (1) The malpractice complaint constitutes and was properly employed as impeachment evidence regarding Louise Barkley Braden (Louise); and alternatively, that (2) the malpractice complaint may be offered (at the end of a trial) to "impeach" the documentary evidence received at the trial; and (3) that the malpractice complaint otherwise is admissible as an admission by petitioner. Petitioner argues that the malpractice complaint was (1) offered untimely, violating the Court's pretrial order;[2] (2) otherwise irrelevant; and (3) offered in such a manner as to surprise petitioner.[3]

Respondent first saw and obtained a copy of the malpractice complaint on December 8, 1986, the date of the calendar call involving this case. The trial of this case took place on December 10, 1986, and the parties offered a stipulation of facts consisting of 23 paragraphs with 15 attached exhibits. Respondent chose to reserve the complaint as impeachment evidence, rather than offer it for stipulation or in anticipation of its use.

At trial, petitioner called a single witness, Louise, who gave brief testimony. Louise was the wife of the now deceased businessman who was involved with petitioner. Her testimony revealed that her knowledge about the company was limited to some involvement after her former husband's death. She mainly confirmed some stipulated

---

[2]The Court's pretrial order, which was sent to the parties 3 months before trial, ordered the parties (in pertinent part) to stipulate all documentary and written evidence, "unless authenticity is questioned or the evidence is to be used to impeach the credibility of a witness." Additionally, the parties were ordered to exchange documentary evidence, as follows:

"Any documents or materials which a party expects to utilize in the event of trial (except for impeachment), but which are not stipulated, shall be identified in writing and exchanged by the parties fifteen (15) days before the call of the calendar [Dec. 8, 1986]. The Court may refuse to receive in evidence any document or material not so stipulated or exchanged, unless otherwise agreed by the parties or allowed by the Court for good cause shown."

[3]Petitioner's attorneys in this case are different from those representing petitioner in the malpractice proceeding. Petitioner's attorneys were unfamiliar with the malpractice complaint and requested and received a recess to read it before they were able to make responses to respondent's offer of this document. Furthermore, respondent's attorney did not advise the Court of her intention to use the malpractice complaint.

facts and stated that she knew of no business purpose for the transactions in dispute.

Following Louise's testimony, petitioner rested and respondent called no witnesses. Instead, respondent offered the malpractice complaint as "impeachment evidence." At trial, respondent stated that the malpractice complaint impeached petitioner's entire position in this case. Respondent did not rely upon the malpractice complaint as impeaching Louise's testimony directly.

We note at the outset that it is no surprise that the allegations of the malpractice complaint seek to show a tax result which is the exact opposite of that sought in the petition to this Court. In essence, the malpractice proceeding is the petitioner's remedy if it is unsuccessful in this case, and the corollary is also true. There is nothing unusual about pleading or advancing alternative positions, even in the same proceeding, as respondent is many times required to do. Rule 31(c), Tax Court Rules of Practice and Procedure; *Doggett v. Commissioner*, 66 T.C. 101, 103 (1976). We now consider whether the malpractice complaint was timely offered and is otherwise admissible into evidence.

### Impeachment Question

Rule 607 of the Federal Rules of Evidence permits impeachment of a witness by any party. One common method of impeachment is by a prior inconsistent statement.[4] Respondent presents the novel argument that the malpractice complaint should be admitted to impeach the documents already stipulated to and to impeach petitioner's position in this case.

We turn first to whether Louise's testimony is factually inconsistent with the malpractice complaint. Louise testified that the corporations were deeply in debt and could not service the debt from current earnings. Upon advice of petitioner's tax advisors, a plan was devised to enter into corporate transactions and sell off some real property. Louise also testified that she knew of no "pure business justification for the reorganization of Western Arizona

---

[4]The inconsistent statement could be received merely to show the inconsistency, but would not necessarily be received in evidence for the truth of the matters stated therein. Fed. R. Evid. 801(c).

Development Company to make it a subsidiary of Barkley Company."

Respondent contends that the malpractice complaint "alleges that the purpose of contributing the capital stock of Western Arizona Development Co. to Barkley Co. of Arizona was to pay various debts of plaintiffs in that action at the least tax cost to them." Our reading of the malpractice complaint is that it contains allegations that Louise's former husband's estate tax liability created debts and the various plaintiffs (including petitioner) were deeply in debt. These debts generated the need to sell a portion of the corporate real property and certain corporate transactions were entered into, upon advice of the tax advisors, to facilitate that end. In other words, the factual allegations are substantially the same. Accordingly, there is no factual inconsistency, rather only an inconsistency of the conclusion that the facts may support. That conclusion will be one of the determinations that we will be asked to address in the substantive portion of the case.

We now consider respondent's proposition that, without petitioner's knowledge, respondent may hold a document until the conclusion of a trial, and then offer it to "impeach" any or all of the documentary evidence that had been received in the record. We view respondent's argument as having two fatal flaws.

First, by definition "impeachment" is: "To call in question the veracity of a witness, by means of evidence adduced for that purpose, or the adducing of proof that a witness is unworthy of belief." Black's Law Dictionary 886 (4th ed. 1951). Respondent cannot "impeach" documents (inanimate objects) without regard to the source of those documents (the maker or other qualified person). Secondly, respondent offered the malpractice complaint in an untimely fashion, only after petitioner had rested its case and respondent stated that he had no witnesses to testify on his behalf.[5] Accordingly, we find that respondent's offer of the

---

[5]We do not doubt that respondent could have offered the malpractice complaint for the truth of the matters stated through Louise when she was on the stand. Fed. R. Evid. 801(c) and 801(d)(1). Without the use of a witness, however, the document has hearsay problems and the rules require that Louise have the opportunity to explain any inconsistencies and/or to adopt the document as her own.

malpractice complaint to "impeach" documentary evidence must be rejected.

## Admission Question

Our discussion concerning impeachment is somewhat dispositive of the admission question. The problem here is respondent's timing. Respondent failed to comply, to the extent possible,[6] with our pretrial order and Rule 91 of this Court's Rules of Practice and Procedure, which required or ordered the parties to stipulate and exchange documents.[7] Respondent's failure to comply under these circumstances was prejudicial to petitioner and presented the type of surprise that the pretrial order and Rule 91 of this Court's Rules of Practice and Procedure were designed to obviate.

In view of the foregoing, petitioner's motion to exclude (Exhibit P from evidence) is granted and,

*An appropriate order will be entered.*

---

[6]Even though respondent received the malpractice complaint only 2 days prior to the commencement of trial, it could have been offered to petitioner prior to trial.

[7]It is clear that factual allegations contained in pleadings which have been superseded by amended pleadings in the same proceeding may be admissible as an admission by a party. Weinstein on Evidence, par. 801(d), at 801-10, and par. 801(d)(2)(D), at 801-137 (1978); *Frank v. Bloom*, 634 F.2d 1245, 1251 (10th Cir. 1980). A more difficult question is whether a party's pleading in one case may be used as an evidentiary admission in other litigation, the very situation with which we are confronted. Because of respondent's untimely proffering of the malpractice complaint, we do not have to reach that question here. At the very least, however, the party against whom an admission is being offered should be entitled to an opportunity to explain the alleged admission, analyze the effect of the document on its case, and consider and explore the existence of additional evidence which may contradict or mitigate such an admission.