DIXSON INTERNATIONAL SERVICE CORPORATION,
PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

DIXSON, INC. AND SUBSIDIARIES, PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket Nos. 22829-88,[1] 22832-88.    Filed May 17, 1990.

*Melvin A. Coffee,* for the petitioners.
*Barbara E. Horan,* for the respondent.

[1]For the sake of convenience, these cases are consolidated for purposes of opinion.

## OPINION

RUWE, *Judge:* Respondent, in two separate notices of deficiency, determined the following deficiencies in petitioners' corporate income taxes:

*Dixson International Service Corp.*
*Docket No. 22829-88*

| TYE | Deficiency |
| --- | --- |
| Sept. 30, 1977 | $130,279 |

*Dixson, Inc. & Subsidiaries*
*Docket No. 22832-88*

| TYE | Deficiency |
| --- | --- |
| Sept. 30, 1974 | $62,600 |
| Sept. 30, 1975 | 125,189 |
| Sept. 30, 1976 | 21,149 |
| Sept. 30, 1977 | 461,952 |
| Sept. 30, 1978 | 49,710 |

This matter is before the Court on petitioners' motions for litigation costs pursuant to Rule 231[2] and section 7430.

Dixson, Inc., & Subsidiaries (Dixson) is a corporation organized and existing under the laws of the State of Colorado. At the time the petition was filed, Dixson had its principal place of business at Grand Junction, Colorado. Dixson International Service Corp. (International), a wholly owned subsidiary of Dixson, is a corporation organized and existing under the laws of the State of Colorado. At the time the petition was filed, International also had its principal place of business at Grand Junction, Colorado.

On September 6, 1988, Dixson and International filed separate petitions, placing in controversy each adjustment reflected in the notices of deficiency. On May 1, 1989, the parties filed stipulations of settlement disposing of all issues contained in the two notices of deficiency. The parties indicated that they would need additional time to compute the tax effect of their settlement. We ordered the parties to submit decision documents by July 31, 1989, and subsequently extended the due date to September 30, 1989. These documents were never filed. Instead, on October 2, 1989, Dixson filed a motion for award of litigation costs. On

---

[2]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code as amended and in effect for the years in issue.

the following day, International filed a motion for award of litigation costs in which it adopted and incorporated the reasoning set forth in Dixson's previously filed motion. Inasmuch as International has fully adopted the reasoning set forth in the motion filed by Dixson, we will refer to the two motions in the singular.

Respondent, in opposing petitioners' motion, argues that petitioners' failure to raise the issue of litigation costs prior to settling all other aspects of these related cases precludes petitioners from seeking an award of litigation costs and that, in any event, petitioners are not entitled to litigation costs because their motion was untimely under Rule 231. Respondent also argues that petitioners have failed to prove that they are prevailing parties because they have failed to establish that they substantially prevailed with respect to the amount in controversy, have failed to establish that the position of the United States in these civil proceedings was not substantially justified, and have failed to demonstrate that they meet the Equal Access to Justice Act net worth test required by section 7430(c)(4)(A)(iii). If we find that petitioners are entitled to reasonable litigation costs, respondent argues that the amounts claimed by petitioners are excessive or in some instances do not fall within the definition of "reasonable litigation costs" under section 7430(c).

Section 7430 establishes the criteria upon which an award of litigation costs is to be based. It does not, however, detail the time and manner in which taxpayers' claims for awards of litigation costs are to be made. Instead, Congress left to the courts the task of developing procedures for claiming litigation costs. *Sanders v. Commissioner,* 813 F.2d 859, 862 (7th Cir. 1987), affg. an order of this Court.

Respondent contends that the stipulations of settlement filed by the parties on May 1, 1989, settled all issues in these related cases and, therefore, preclude petitioners from seeking an award of litigation costs. Respondent points out that in the course of preparing the stipulations of settlement for presentation to the Court,

Counsel for petitioner[s] did not state that the settlement was contingent on a litigation costs issue in the stipulation of settlement, nor did he raise the issue at calendar call. In fact, the parties both agreed to file

decision documents within ninety days, which decision documents could not have been filed if there were to be a dispute as to attorneys fees.

Noting that petitioners' counsel did not even raise the issue of litigation costs until September 28, 1989, respondent contends that petitioners' motion violates the terms of the settlements presented to the Court on May 1, 1989. We disagree.

The stipulations of settlement contain no language stating that petitioners had waived their rights to seek an award of litigation costs. Indeed, the documents do not mention litigation costs. The failure to raise the issue of litigation costs prior to settling all other aspects of a case does not preclude a motion for litigation costs. Even the entry of a stipulated decision will not always preclude a party from successfully seeking litigation costs. In *Cassuto v. Commissioner*, 93 T.C. 256, 260 (1989), on appeal (2d Cir., Apr. 17, 1990), we vacated stipulated decisions and awarded litigation costs.

We also find no support for respondent's argument that petitioners' motion is untimely under Rule 231. In pertinent part, Rule 231(a) provides:

(2) *Unagreed Cases:* Where a party has substantially prevailed and wishes to claim reasonable litigation costs, and there is no agreement as to that party's entitlement to such costs, a claim shall be made by motion filed—

(i) Within 30 days after the service of a written opinion determining the issues in the case;

(ii) Within 30 days after the service of the pages of the transcript that contain findings of fact or opinion stated orally pursuant to Rule 152 (or a written summary thereof); or

(iii) After the parties have settled all issues in the case other than litigation costs. See paragraphs (b)(2) and (c) of this Rule regarding the filing of a stipulation of settlement with the motion in such cases.

Rule 231(c) provides that where the parties have agreed to settle some issues, but cannot agree on an award of litigation costs, a motion for an award of litigation costs is to be accompanied by a stipulation of settlement. Rule 231 does not prohibit the filing of a stipulation of settled issues prior to a motion for litigation costs. It simply requires that when the motion is filed in a case where all other issues have been settled, a stipulation of settled issues accompany the motion.

In *Cassuto v. Commissioner, supra,* the taxpayers made a motion for litigation costs after this Court had entered decisions based upon the parties' settlement. We vacated the decisions and allowed the motion to be filed, finding that the taxpayers' attorney did not intend to resolve the litigation cost issue through the filing of a decision document. *Cassuto v. Commissioner, supra* at 260. Similarly, in *Minahan v. Commissioner,* 88 T.C. 492 (1987), we allowed the taxpayers to file motions for litigation costs after the entry of stipulated decisions. In the instant case, no decision was entered and the stipulations of settled issues did not address the issue of litigation costs. We find that petitioners' motion for litigation costs was made in a timely manner.

There were two basic issues raised by the pleadings. The first involved an intangible drilling cost (IDC) deduction. On its corporate income tax return for tax year ended September 30, 1977, Dixson claimed an IDC deduction of $1,350,000. Respondent determined that all events fixing Dixson's liability for the IDC had not occurred during the tax year ended September 30, 1977. During the audit and at the administrative appeals level, respondent had proposed to allow this IDC deduction for Dixson's tax year ended September 30, 1978, if Dixson would agree to the disallowance for the prior year. Dixson did not agree. In the notice of deficiency, respondent disallowed the IDC deduction for the year ended September 30, 1977, and made no IDC adjustment for the year ended September 30, 1978. In his answer, respondent denied petitioner's allegations that Dixson was entitled to the IDC deduction in either the first or second year. On brief, respondent explains that he took this alternative position to protect the Government. Specifically, respondent contends that his primary position was that the IDC deduction should properly be allowed in the year ended September 30, 1978, but that he did not admit this in his answer because there was a possibility that petitioner could prove its alleged entitlement to the deduction in the prior year.

The second issue involved International's qualification as a domestic international sales corporation (DISC). Respondent determined that International failed to qualify as a

DISC during the tax year ended September 30, 1977. Respondent took the position that International failed to meet the 95 percent qualified export receipts test set forth in section 992(a)(1)(A). Specifically, respondent determined that none of International's receipts from a project involving the building of a quartz-producing plant in Poland were qualified export receipts under section 993(a). As a result, respondent issued separate notices of deficiency to Dixson and International taking alternative positions. Respondent determined that International's failure to qualify as a DISC resulted in its being taxed as a regular corporation on its income. At the same time, the notice of deficiency sent to Dixson made alternative adjustments reversing all DISC-related income and deductions on Dixson's returns for the year ended September 30, 1977, and determining that Dixson had deemed distributions pursuant to section 995(b)(2) in the year ended September 30, 1978. Respondent's answers denied error with respect to each of these determinations. Respondent acknowledges that the alternative positions taken in the respective notices[3] and answers cannot each be correct, but characterizes them as permissible alternative positions taken to protect respondent's interests.

Under the terms of the agreement reached by the parties in the stipulations of settlement, Dixson was allowed to deduct 50 percent of the claimed IDC deduction during tax year ended September 30, 1977, and the remaining 50 percent the following year. International conceded that it did not qualify as a DISC during the tax year ended September 30, 1977. Based on this concession, respondent conceded that International would, nevertheless, be deemed to qualify as a DISC for the tax year ended September 30, 1977, if it made a deficiency distribution to Dixson pursuant to section 992(c). The parties agreed that the deficiency distribution would be computed under the assumption that 20 percent of the receipts from the quartz-producing plant project qualified as export receipts under section 993(a).

Under the terms of the settlement, the parties agreed that:

---

[3]District Counsel did not review either of the notices of deficiency prior to mailing.

because [International] is deemed for settlement purposes to qualify as a domestic international sales corporation for the taxable year ending September 30, 1977, the adjustments in the statutory notice issued to [Dixson] related to the disqualification of [International] as a DISC will be reversed. * * * The adjustments in the notice of deficiency issued to [International] * * * will also be reversed.

As a result of the concessions made by both parties in the stipulations of settlement, the deficiencies originally determined by respondent were reduced to agreed deficiencies and overpayments as follows:

*Dixson International Service Corp.*

| TYE | Per notice of deficiency | Agreed deficiency/overpayment per settlement |
|---|---|---|
| 09/30/77 | $130,279 | - - - |

*Dixson, Inc. & Subsidiaries*

| TYE | Deficiency | Agreed deficiency/overpayment |
|---|---|---|
| 9/30/74 | $62,600 | $62,600 |
| 9/30/75 | 125,189 | (88,005) |
| 9/30/76 | 21,149 | (28,858) |
| 9/30/77 | 461,952 | 71,408 |
| 9/30/78 | 49,710 | - - - |
| 9/30/84 | - - - | (1,668) |
| Total | 850,879 | 15,477 |

The settlements also required International to pay interest in the amount of $37,488 pursuant to the provisions of section 992(c)(2)(B) in connection with the deficiency distribution.

Section 7430(a) authorizes an award of reasonable litigation costs to the "prevailing party" in a tax case. To be considered a prevailing party, as that term is defined in section 7430(c)(2), the party seeking the award must establish, among other things, "that the position of the United States in the civil proceeding was not substantially justified" and that it has "substantially prevailed" with respect to either (1) the amount in controversy, or (2) the most significant issue or set of issues presented. Sec. 7430(c)(2)(A). To be a "prevailing party," the party seeking litigation costs must also establish that it meets the Equal Access to Justice Act net worth test. Sec. 7430(c)(2)(A)(iii). Petitioners bear the burden of proving that they are entitled

to litigation costs.[4] *Cassuto v. Commissioner, supra* at 261; *Rutana v. Commissioner,* 88 T.C. 1329, 1332 (1987); Rule 232(e).

It is apparent from this brief discussion of the issues that the net deficiencies were very substantially reduced and that petitioners substantially prevailed with respect to the amount in controversy. Respondent argues that we should recognize that the deficiencies in the notices and pleadings exceeded the amounts of tax actually in controversy because of the alternative positions taken by respondent. Respondent cites no authority for this proposition. In a case like this, where neither the notices nor respondent's pleadings indicate that respondent was taking inconsistent alternative positions, the amount in controversy must be determined from a literal reading of the notices of deficiency and pleadings.[5]

Petitioners, having established that they prevailed with respect to the amount in controversy, must show that respondent's position, i.e., the position of the United States, was not substantially justified[6] if they are to be entitled to an award of litigation costs. Section 7430(c)(4) defines the "position of the United States" to include "(A) the position taken by the United States in the civil proceeding, and (B) any administrative action or inaction by the District Counsel of the Internal Revenue Service (and all subsequent administrative action or inaction) upon which such proceeding is based." Section 7430(c)(4) was added to the Code in 1986 and applies to any amounts paid after September 30, 1986, in proceedings commenced after December 31, 1985. Tax Reform Act of 1986, Pub. L. 99-514, sec. 1551(e), 100 Stat. 2085, 2753.[7]

---

[4]Respondent concedes that petitioners have exhausted their administrative remedies pursuant to sec. 7430(b)(1).

[5]Were we to follow respondent's rationale, there is no way on the basis of this record that we would be able to determine the "amount in controversy."

[6]For civil tax actions or proceedings commenced after Dec. 31, 1985, sec. 1551(d)(1) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2752, changed the language describing the position of the United States from "unreasonable" to "was not substantially justified." However, this and other courts have held that the "substantially justified" standard is not a departure from the previous reasonableness standard. *Sokol v. Commissioner,* 92 T.C. 760, 764 n. 7 (1989); *Sher v. Commissioner,* 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988) and cases cited therein.

[7]In cases commenced prior to the effective date of the Tax Reform Act of 1986, we have held that we will only examine the events occurring after the filing of the petition, i.e., only the Government's in-court litigating position. *Rutana v. Commissioner,* 88 T.C. 1329, 1332

We have held that we will not consider the reasonableness of respondent's prelitigation position unless and until District Counsel becomes involved. *Sher v. Commissioner*, 89 T.C. 79, 86-87 (1987), affd. 861 F.2d 131 (5th Cir. 1988); *Sokol v. Commissioner*, 92 T.C. 760, 764-765 (1989); *Gantner v. Commissioner*, 92 T.C. 192, 194 (1989).[8] We need not consider the reasonableness of the administrative action or inaction of District Counsel, and subsequent administrative actions in this case because District Counsel had no involvement in this case prior to the mailing of the notices of deficiency.

It is apparent from the stipulations of settled issues that the disposition of the underlying issues involved substantial concessions on both sides. This fact alone would normally indicate that respondent's position was substantially justified. Petitioners argue that their concessions were not significant because they were part of a package settlement that resulted in greatly reduced net deficiencies. However, the record indicates that the tax computations were very complex and time consuming and that the parties settled the underlying issues without knowing exactly what the tax results would be. In petitioners' brief filed on October 6, 1989, it is acknowledged that:

6. Only when the final fgures [sic] were received on September 22, 1989, was it clear to Petitioner's counsel that the Petitioner had substantially prevailed and Petitioner's counsel could file a motion in good faith setting forth that Petitioners had substantially prevailed.

---

(1987); *Don Casey Co. v. Commissioner*, 87 T.C. 847, 861-862 (1986); *Wasie v. Commissioner*, 86 T.C. 962, 967-968 (1986); *Baker v. Commissioner*, 83 T.C. 822, 827 (1984), affd. on this point 787 F.2d 637, 641-642 (D.C. Cir. 1986). However, the circuit courts are divided on this issue. See *Sokol v. Commissioner*, supra at 764. The Tenth Circuit Court of Appeals, to which appeal of this case would lie, has approved the position taken by this Court. *United States v. Balanced Financial Management*, 769 F.2d 1440, 1450 (10th Cir. 1985).

Subsequent to the Tax Reform Act of 1986, sec. 7430 was amended by the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. 100-647, sec. 6239(c), 102 Stat. 3342, 3745-3746. As amended, the provision is effective for civil tax proceedings commenced after Nov. 10, 1988, and does not apply to these cases. TAMRA, sec. 6239(d), 102 Stat. at 3746.

[8]There is a split in the circuits as to the meaning of sec. 7430(c)(4) as applicable herein. Compare *Sher v. Commissioner*, 861 F.2d 131 (5th Cir. 1988) with *Weiss v. Commissioner*, 850 F.2d 111 (2d Cir. 1988), revg. and remanding 89 T.C. 779 (1987) ("position of the United States" includes position taken in notice of deficiency). See also *Egan v. Commissioner*, 91 T.C. 705, 712 n. 3 (1988). The Tenth Circuit, to which an appeal would lie in the instant case, has not spoken on the issue, and we therefore follow our own precedent. *Egan v. Commissioner*, supra; *Golsen v. Commissioner*, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

Petitioners argue that it was unreasonable for respondent to have taken alternative positions in his notices of deficiency and answers without specifically disclosing that fact in the notices and answers. We have recognized that the Commissioner may, at times, take alternative or inconsistent positions. Rule 31(c); *Cassuto v. Commissioner, supra* at 265; *Barkley Co. v. Commissioner,* 89 T.C. 66, 68 (1987); *Doggett v. Commissioner,* 66 T.C. 101, 103 (1976). There are limits, however, to the propriety of taking inconsistent positions. If a so-called inconsistent position has no possible chance of success, it has been held to be unreasonable. *Cassuto v. Commissioner, supra* at 262-265. Petitioners have not shown that this is a situation where any one of respondent's alternative positions had no possible chance of success at the time he took the position. Respondent's alternative positions regarding the proper year to allow the IDC deduction were each possible results that depended upon the factual determination of when all events had occurred to fix liability for the IDC. In the end, the parties split the deduction between the 2 years. Likewise, respondent's alternative positions regarding the tax ramifications of the disqualification of International's DISC status appear to have each been possible results depending upon the ultimate disposition of the underlying issues.[9] The previously mentioned terms of the stipulations of settlement indicate that there was merit in respondent's positions.

Under different circumstances, petitioners' argument that respondent should explicitly disclose the fact that he is taking alternative positions might be more persuasive. We have previously indicated that it is preferable for the Commissioner to clearly indicate that he is taking alternative positions and state that he has no intention to tax the same income or disallow the same deductions twice. *Doggett v. Commissioner, supra* at 104. It is possible to think of a hypothetical fact situation where unexplained alternative and theoretically inconsistent positions could be totally misleading and cause an unsophisticated taxpayer to

[9]For an illustration of potential tax ramifications of disqualification as a DISC, see *Addison International, Inc. v. Commissioner,* 90 T.C. 1207 (1988), affd. 887 F.2d 660 (6th Cir. 1989); *Rocky Mountain Associates v. Commissioner,* 90 T.C. 1231 (1988).

suffer anguish and to expend needless time and effort trying to comprehend the Government's position. The instant case, however, does not resemble such a hypothetical situation. Petitioners were corporations engaged in complex international transactions. The issues in these cases were the subject of examination reports and appeals conferences. The record shows that petitioners, through their representations, were familiar with the issues and respondent's position prior to the mailing of the notices of deficiency. Petitioners' counsel indicates that he was not involved in these cases prior to the issuance of the notices of deficiency, but we think that fact is immaterial. His clients and their representatives were involved and knowledgeable, and his pleadings demonstrate that he understood the situation. Shortly after the pleadings were closed, the parties resolved their differences and settled all of the complex issues raised in the pleadings. Each side made substantial concessions regarding the underlying issues. We find that petitioners have not established that respondent's position was not substantially justified.

Petitioners failed to prove that they were prevailing parties for another reason. Section 7430(c)(2)(A)(iii) provides that a "prevailing party" must meet the net worth requirements of 28 U.S.C. sec. 2412(d)(1)(B).[10] Section 2412(d)(1)(C)(2)(B) of title 28 defines a party for these purposes as:

(ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed; * * * [28 U.S.C. sec. 2412(d)(1)(C)(2)(B) (1989).]

The burden of proof with respect to the net worth requirements is on petitioners. *Polyco, Inc. v. Commissioner,* 91 T.C. 963, 966 (1988).

In its motion for award of litigation costs filed October 2, 1989, petitioners state that as of September 1, 1988, both

---

[10]Sec. 7430(c)(2)(A)(iii) was amended to refer to the net worth requirements of 28 U.S.C. sec. 2412(d)(1)(B) by the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. 100-647, sec. 1015(i), 102 Stat. 3342, 3571. This amendment to sec. 7430(c)(2)(A)(iii) is effective as if included in the Tax Reform Act of 1986. TAMRA, sec. 1019(a), 102 Stat. at 3593. The Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, is effective for proceedings commenced after Dec. 31, 1985.

Dixson and International each had a net worth of less than $7 million. Petitioners provided no other information regarding their net worth. Respondent, in a notice of objection filed November 9, 1989, alleges petitioners' mere allegation is insufficient and that Dixson and International have failed to prove that they meet the net worth test.

On November 14, 1989, petitioners supplemented their motion for award of litigation costs. This supplemental motion addressed many of the issues raised by respondent's memorandum in opposition. Petitioners' supplemental motion, however, did not make any reference to their net worth and contained no information related to their net worth. Petitioners also filed a reply brief on November 15, 1989, which addressed in detail certain points raised in respondent's opposition memorandum. Again, they made no reference to net worth requirements or information.

In *Doyle v. Commissioner,* T.C. Memo. 1988-449, we denied the taxpayer's motion for award of litigation costs solely on the fact that the taxpayer offered no proof as to net worth. In *Hall v. Commissioner,* T.C. Memo. 1989-187, we vacated our original opinion denying an award of litigation costs based on the taxpayers' failure to establish their net worth. We found that the taxpayers' failure was due to counsel's oversight. In that unique situation, we allowed the taxpayers the opportunity to establish that they met the net worth requirements set forth in the statute.

In this case, it is obvious that petitioners are aware of the net worth requirements. Petitioners were put on notice that respondent was specifically objecting to an award of litigation costs because of petitioners' failure to offer any proof of their net worth. Petitioners, nevertheless, failed to provide any supporting information to establish their net worth or to even address the issue in their supplemental motion and reply brief. Petitioners have not asked for a hearing to specifically address this issue in accordance with Rule 231(b)(6). Having failed to offer any proof that they meet the net worth requirements necessary to be a "prevailing party" under section 7430(c)(2)(A)(iii), petitioners are not entitled to an award of litigation costs.

*Appropriate orders will be issued.*