CHARLES E. NICHOLSON, JR., AND MARGARET K. NICHOLSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Nicholson v. Commissioner
Docket No. 3343-92
United States Tax Court
T.C. Memo 1994-280; 1994 Tax Ct. Memo LEXIS 283; 67 T.C.M. (CCH) 3109; June 20, 1994, Filed *283 Decision will be entered under Rule 155. For petitioners: Barry A. Furman. For respondent: Joellyn R. Cattell. TANNENWALD
TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: This case is before the Court on a motion for litigation costs under section 7430 and Rules 230 through 232. [1]
Respondent determined deficiencies in petitioners' Federal income taxes for the taxable years 1983, 1984, 1985, and 1986 in the amounts of $ 3,660, $ 25,179, $ 20,385, and $ 21,180, respectively, and increased interest under section 6621(c) in respect of the years other than 1986. Petitioners resided in Woodbury, New Jersey, at the time they filed the petition herein. The deficiencies were based upon the disallowance of deductions under section 465(a) on the ground that petitioners were not at risk within the meaning of section *284 465(b)(4). Because the case has been settled, see infra pp. 4-5, we are not required to resolve the substantive at risk issue. However, we think it necessary, in order to understand the position of the parties in respect of the award of litigation costs, to set forth the background giving rise to that issue. That background [2] is as follows: In 1983, Equipment Leasing Exchange, Inc. (ELEX), purchased certain equipment and leased the same to the Milton Hershey School (Hershey). The purchase price of the equipment was $ 362,168 of which $ 333,700 ($ 312,550 with interest at 14.5 percent per annum and $ 21,150 with interest at 13.0 percent per annum) was financed by nonrecourse borrowing from The Hershey Bank (Bank). The lease was for a term of 6 years and provided for a monthly rental of $ 7,478. The notes to the Bank were secured by the equipment and the Hershey lease. In July 1986 the notes were paid in full. *285 Thereafter in 1983, petitioner Charles E. Nicholson (Nicholson) purchased the equipment together with an assignment of the Hershey lease from ELEX for $ 386,798. In part payment of the purchase price, Nicholson executed three promissory notes in favor of ELEX in the amounts of $ 17,500, $ 20,378, and $ 336,195. The first two promissory notes were payable, together with a specified dollar amount of interest, on March 15, 1984, and March 15, 1985, respectively, and were recourse notes in that each specifically provided that, in the event that it was not paid on or before maturity, ELEX had the right to "Pursue Maker for the collection of its obligations". The third note contains no such language; it was payable in monthly installments of $ 7,348.80 each. All three notes were secured by the equipment and the Hershey lease subject to the security interest of the Bank. The deficiency notice was issued on December 11, 1991, the petition herein was filed on February 14, 1992, the case was calendared for trial on November 18, 1992, trial memoranda were submitted by the parties, the case was called for trial on April 19, 1993, and was continued in light of the parties' representation *286 that the case would be settled or submitted fully stipulated, and a stipulation of settled issues was filed with the Court on February 1, 1994. The stipulation of settled issues provided: The parties hereby agree to the following settlement of the issues in the above-entitled case: 1. It is agreed for purposes of settlement that petitioners' claimed losses with respect to their activity in the Hershey transaction during the years 1983 through 1985 shall be disallowed subject to their deductibility as provided below; 2. It is agreed for purposes of settlement that petitioners were at risk as defined under I.R.C. Section 465 on the installment note in the amount of $ 336,195.00 with respect to their activity in the Hershey transaction beginning in 1986 and are entitled to suspended losses beginning in 1986; 3. It is agreed for purposes of settlement that petitioners are required to include in taxable income for the taxable year ended December 31, 1983 the amount of $ 18,300.00 which represents the amount of Schedule E loss disallowed on petitioners' investment in Hershey and Cyclops[3] in 1983; 4. It is agreed for purposes of settlement that petitioners are required to include *287 in taxable income for the taxable year ended December 31, 1984 the amount of $ 72,341.00 which represents the amount of Schedule E loss disallowed on petitioners' investment in Hershey and Cyclops in 1984; 5. It is agreed for purposes of settlement that petitioners are required to include in taxable income for the taxable year ended December 31, 1985 the amount of $ 43,024.00 which represents the amount of Schedule E loss disallowed on petitioners' investment in Hershey and Cyclops in 1985; 6. It is agreed for purposes of settlement that for the taxable year ended December 31, 1986, petitioners are entitled to deduct $ 81,723.00 with respect to their investment in the Hershey transaction as a suspended loss under I.R.C. Section 465; [4]
7. It is agreed for purposes of settlement that respondent concedes increased interest under I.R.C. Section 6621(c), formerly, 6621(d) for all issue years. (2) Deduction in succeeding year. -- Any loss from an activity to which this section applies not allowed under this section for the taxable year shall be treated as a deduction allocable to such activity in the first succeeding taxable year.
See also sec. 1.465-2(b), Proposed Income Tax Regs., 44 Fed. Reg. 32235, 32237 (June 5, 1979).
*288 In order to be awarded litigation costs, petitioners must show that: (1) They exhausted all administrative remedies, (2) they met the net worth requirement of section 7430(c)(4)(A)(iii), (3) they have substantially prevailed with respect to the amount in controversy or most significant issues, and (4) the position of respondent was "not substantially justified". Sec. 7430. Petitioners have satisfied the first and second conditions. With respect to the third condition, respondent mentions on brief the "prevailing party" issue but then does no more than state that petitioners may in fact be able to prove that they meet the alternative requirements of that condition namely the amount in controversy or the most significant issues (in this case, the at risk issue in respect of the Hershey transaction). Although we have not been furnished with the exact amount of the net deficiency for the 4 years at issue, the parties have indicated that, taking into account some $ 21,180 (the amount of the deficiency determined for 1986) which represents an excess abatement of tax for 1986, such net deficiency is between $ 2,500 and $ 4,000. [5] Such netting appears to be appropriate. See *289 Dixson Corp. v. Commissioner, 94 T.C. 708, 709-715 (1990). In light of the foregoing and respondent's uncertain position, we find it unnecessary to dissect the significant issue element requirement of the third condition, which would involve consideration of the impact of the terms of the settlement between the parties. Cf. Dixson Corp. v. Commissioner, supra at 716; see infra p. 10. We therefore turn to the fourth condition, on which the parties have locked horns, [6] namely whether respondent's position was "not substantially justified", noting that a decision in favor of respondent on this condition would moot the entire "prevailing party" issue. *290 Whether respondent's position was "not substantially justified" depends upon an examination of all the facts and circumstances in order to determine if that position had a reasonable basis in law and fact. Price v. Commissioner, 102 T.C.     (April 21, 1994) (slip op. p. 3). Petitioners bear the burden of proof. Rule 232(e); Estate of Wall v. Commissioner, 102 T.C. 391, 393 (1994). Petitioners argue that the transactions involved herein did not create a sufficient basis for concluding that Nicholson was not at risk during all of the years at issue. They point to the fact that respondent relies upon two elements, namely (1) the fact that the obligations of ELEX to the Bank were nonrecourse, and (2) the offsetting (except for some $ 50) of the lease payments by Hershey and the payments of Nicholson on his notes to ELEX. [7]
*291 Petitioners point out correctly that the first element, i.e., the presence of nonrecourse obligations of others in an earlier part of a transaction such as is involved herein, has been held not to be determinative of the at risk issue, but they overlook the fact that such element should be considered. See Wag-A-Bag Inc. v. Commissioner, T.C. Memo. 1992-581, and cases collected therein. Petitioners also correctly point out, in respect of the second element, that the presence of offsetting rental and note payments is not determinative but again overlook the fact that such element should be taken into account. See Thornock v. Commissioner, 94 T.C. 439, 453 (1990); see also Wimpie v. Commissioner, T.C. Memo. 1994-41; Wag-A-Bag Inc. v. Commissioner, supra.
Respondent relies on the galaxy of cases where the two elements relied upon by petitioners were present and where the taxpayers therein were held not to be at risk. Those cases, as well as other cases not cited by respondent, are analyzed in some detail in Thornock v. Commissioner, supra, *292 and Wag-A-Bag Inc. v. Commissioner, supra, which analyses reveal that those cases involved elements in addition to the presence of nonrecourse obligations at an earlier stage and offsetting payments. Thus, the message which such cases convey is murky at best. In any event, we are not prepared to say that they do not furnish some basis for respondent's position on the substantive issue involved herein. In short, the two elements upon which the parties herein have focused their arguments are not automatically dispositive of the "at risk" issue. Two non per se elements do not amount to one per se element either for or against petitioners. To be sure, it is entirely possible that, had the instant case gone to decision on the substantive at risk issue, we would have resolved that issue in favor of petitioners. But that result would not necessarily have entitled petitioners to recover litigation costs under section 7430. It is clearly established that the fact that respondent loses a significant issue, whether by concession or after trial, is not determinative that her position was reasonable. Price v. Commissioner, supra.
One other point *293 advanced by petitioners requires our attention. They maintain the fact that the notes from ELEX to the Bank were paid off in 1986 should be taken into account in determining whether Nicholson was at risk not only for that year but for 1983, 1984, and 1985 as well. We disagree. The statute is clear that the at risk determination is to be made "at the close of the taxable year". Sec. 465(a)(1); sec. 1.465-2(a), Proposed Income Tax Regs., 44 Fed. Reg. 32235, 32237 (June 5, 1979). Thus, retroactive application of later facts is precluded and a taxpayer is limited to the carryover of suspended losses to a later year when the at risk conditions have changed in his favor, see supra note 4, which is the situation herein in respect of the 1986 taxable year. In this connection, we note that the prospective effect of a change in the underlying facts can influence not only resolution of the substantive at risk issue but the reasonableness of respondent's position as well. In our view, the critical consideration herein is the change in the elements of the transaction which took place in 1986 when the nonrecourse obligations to the Bank were paid off. By this *294 action, one of the key factors which have influenced decisions in cases dealing with a situation such as is involved herein was eliminated. Such action, in effect, created two time periods for determining the applicability of the at risk provisions of section 465, one period being the years 1983, 1984, and 1985, and the other being 1986. The settlement agreement reflected this split up of the total time period and the different elements involved, to wit, the disallowance of the Hershey losses for 1983, 1984, and 1985, and the allowance of such loss, together with the carryover of the previous losses, for 1986. Under these circumstances, the settlement of the parties can be taken into account in determining the reasonableness of respondent's position, cf. Dixson Corp. v. Commissioner, 94 T.C. at 716, although its impact may be lessened because petitioners' agreement to the disallowance of the deduction of the 1983, 1984, and 1985 losses was undoubtedly influenced by respondent's agreement to what amounted to an offsetting deduction in 1986. The long and the short of the matter is that, taking into account all the facts and circumstances herein, we *295 are not persuaded that petitioners have carried their burden of proof that they are entitled to litigation costs under section 7430. Petitioners' motion for litigation costs will be denied and, in order to effectuate the settlement of the parties, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code in effect at all times relevant to this case, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Since the case was settled, there is no stipulation or other formal evidence in the record of the transactions involved. The background material set forth has been gleaned from the facts appearing in the pleadings, trial memoranda, and briefs submitted on the motion for litigation costs, and which do not appear to be disputed by the parties.↩
3. The "Cyclops" issue was not contested by petitioners, and the record does not indicate, nor does respondent claim, that it was a significant issue.↩
4. Sec. 465(a)(2)↩ provides: 5. This relatively small amount, in terms of the deficiencies determined by respondent, see supra p. 2, results from permitting petitioners to deduct in 1986 the loss for that year plus the suspended losses which were losses disallowed for 1983, 1984, and 1985, see supra↩ note 4.
6. Respondent does not contend that petitioners unreasonably protracted the proceedings herein. Sec. 7430(b)(4).↩
7. We note that at one point respondent apparently took the position that, because the third note of Nicholson to ELEX did not specify that it was a recourse note, it was therefore nonrecourse. Respondent has not pursued this position in respect of petitioners' motion, and we therefore do not give it any consideration other than to observe that, although the first and second notes contain specific recourse language and can therefore be contrasted with the third note issued at the same time, respondent's position in this respect appears to be contrary to New Jersey law (the law which by agreement between Nicholson and ELEX applies to the notes). N.J. Stat. Ann. sec. 12A:9-504(2) (West 1993 Supp.); Fr. Winkler KG v. Stoller, 839 F.2d 1002↩ (3d Cir. 1988).