T.C. Memo. 1999-127


UNITED STATES TAX COURT


MICHAEL H. JOHNSON AND PATRICIA E. JOHNSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 23702-96.                    Filed April 16, 1999.



<u>Terry B. Bates</u>, <u>Brian J. Seery</u>, and <u>Robert A. Olson</u>, for
petitioners.

<u>Steven M. Roth</u>, for respondent.



MEMORANDUM OPINION

VASQUEZ, <u>Judge</u>:  This case is before the Court on
petitioners' motion for award of litigation and administrative
costs and attorney's fees pursuant to section 7430 and Rule 231.[1]
We see no reason for an evidentiary hearing on this matter.  See

---

[1]  Unless otherwise indicated, all section references are to
the Internal Revenue Code, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

Rule 232(a)(2).  Accordingly, we rule on petitioners' motion on the basis of the parties' submissions and the existing record. See Rule 232(a)(1).  The portions of our opinion on the merits in the instant case, <u>Johnson v. Commissioner</u>, T.C. Memo. 1998-448 (Johnson I), that are relevant to our disposition of this motion are incorporated herein by this reference.

After concessions,[2] the issues for decision are:  (1) Whether petitioners are the "prevailing party" in the underlying tax case; (2) whether petitioners unreasonably protracted the Court's proceeding; and (3) whether the amounts of administrative and litigation costs claimed by petitioners are reasonable.

<u>Background</u>

Petitioners are husband and wife.  Mr. Johnson operated Ford and Lincoln-Mercury motor vehicle dealerships.  The substantive issues in Johnson I were:  (1) Whether petitioners were entitled to defer recognition of gain on the disposition of certain property pursuant to section 1033; (2) whether petitioners were liable for the fraud penalty pursuant to section 6663(a), or, in the alternative, the accuracy-related penalty pursuant to section 6662(a) for 1992; and (3) whether petitioners were liable for the addition to tax for failure to file timely their return for 1992. We held that (1) petitioners were entitled to defer recognition of gain on the disposition of that property pursuant to section 1033; (2) petitioners were not liable for the fraud or accuracy-

_____

[2]  Respondent concedes that petitioners exhausted their administrative remedies and substantially prevailed.

related penalties; and (3) we lacked jurisdiction over the addition to tax for failure to file timely.

Discussion

Section 7430 provides for the award of administrative and litigation costs to a taxpayer in an administrative or court proceeding brought against the United States involving the determination of any tax, interest, or penalty pursuant to the Internal Revenue Code.  An award of administrative or litigation costs may be made where the taxpayer (1) is the "prevailing party", (2) exhausted available administrative remedies,[3] (3) did not unreasonably protract the administrative or judicial proceeding, and (4) claimed reasonable administrative and litigation costs.  See sec. 7430(a), (b)(1), (3), (c).  These requirements are conjunctive, and failure to satisfy any one will preclude an award of costs to petitioners.  See Minahan v. Commissioner, 88 T.C. 492, 497 (1987).

Prevailing Party

To be a "prevailing party" (1) the taxpayer must substantially prevail with respect to either the amount in controversy or the most significant issue or set of issues presented, and (2) at the time the petition in the case was filed, the taxpayer must meet the net worth requirements of 28 U.S.C. sec. 2412(d)(2)(B) (1994).  See sec. 7430(c)(4)(A).  A taxpayer, however, will not be treated as the prevailing party if

---

[3] This requirement applies only to litigation costs.  See sec. 7430(b)(1).

the Commissioner establishes that the Commissioner's position was substantially justified.  See sec. 7430(c)(4)(B).

Respondent contends, inter alia, that petitioners have not satisfied the net worth requirements.

Net Worth Requirements

Rule 231(b)(4) provides that a motion for litigation or administrative costs shall contain "A statement that the moving party meets the net worth requirements, if applicable, of Section 2412(d)(2)(B) of title 28, United States Code (as in effect on October 22, 1986), which statement shall be supported by an affidavit executed by the moving party and not by counsel for the moving party".  The net worth limitation of $2 million applicable to individuals applies separately to each taxpayer.  See Hong v. Commissioner, 100 T.C. 88 (1993); Prager v. Commissioner, T.C. Memo. 1994-420.[4]  The taxpayers bear the burden of establishing that they meet the net worth requirements.  See Rule 232(e); Dixson Intl. Serv. Corp. v. Commissioner, 94 T.C. 708, 718 (1990).

Petitioners' motion for costs contained a statement that petitioners satisfied the net worth requirements.  Petitioners submitted an affidavit that stated their net worth was less than $4 million jointly and $2 million individually.  Petitioners also

---

[4]  The Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 1453(a), 111 Stat. 788, 1055 (effective with respect to proceedings commenced after Aug. 5, 1997), amended sec. 7430 to adopt this rule.  See sec. 7430(c)(4)(D)(ii), as amended.  The petition in this case, however, was filed on Nov. 4, 1996; therefore, this amendment is not applicable herein.  Cf. Maggie Management Co. v. Commissioner, 108 T.C. 430 (1997).

submitted a schedule of their assets and liabilities as of the date the petition was filed (first joint net worth schedule). The first joint net worth schedule listed the following assets and liabilities:

| Assets | Value |
| --- | --- |
| Savings accounts and/or certificates | $62,834 |
| Checking accounts | 24,000 |
| Annuity | 118,615 |
| Investment in dealership | 734,487 |
| Real estate | 7,354,000 |
| Home furnishings | 125,000 |
| Total assets | 8,418,936 |

| Liabilities | Value |
| --- | --- |
| Unsecured bank loans | $71,028 |
| Mortgages, trust deeds or contracts payable | 4,541,660 |
| Total liabilities | 4,612,688 |

The first joint net worth schedule listed the combined net worth of petitioners to be $3,806,248. The first joint net worth schedule did not list either Mr. Johnson's or Mrs. Johnson's individual net worth.

Respondent filed an objection to petitioners' motion in which respondent argues that petitioners' affidavit and first joint net worth schedule are insufficient, and that petitioners have failed to prove that they meet the net worth requirements. Respondent contends that (1) petitioners did not itemize their assets or provide their cost bases;[5] (2) it is unclear whether

---

[5] Although the term "net worth" is not statutorily defined, the "acquisition cost" of the asset, rather than the fair market value, should be used. See Swanson v. Commissioner, 106 T.C. 76,
(continued...)

the listed liabilities are personal liabilities of petitioners or corporate liabilities (i.e., liabilities of Mr. Johnson's car dealership); (3) if the liabilities are personal liabilities, it is unclear whether they are joint liabilities or separate liabilities of either Mr. Johnson or Mrs. Johnson; (4) petitioners failed to identify which assets are community property and which are separate property; and (5) the $2 million net worth limitation applies separately to each taxpayer, and the first joint net worth schedule lists the aggregate net worth of petitioners as less than $4 million but does not establish the net worth of each petitioner.

Petitioners filed a reply to respondent's objection and again submitted an affidavit that stated their net worth was less than $4 million jointly and $2 million individually. Petitioners also submitted three net worth schedules: One listing the net worth of both petitioners as of the date the petition was filed (second joint net worth schedule), one listing the net worth of Mr. Johnson as of the date the petition was filed (Mr. Johnson's net worth schedule), and one listing the net worth of Mrs. Johnson as of the date the petition was filed (Mrs. Johnson's net worth schedule).

The second joint net worth schedule listed the following assets:

---

⁵(...continued)
96 (1996).

| Assets | Value |
|---|---|
| Savings accounts and/or certificates | $103,337 |
| Checking accounts | 10,021 |
| Investment in dealership | 1,328,800 |
| Real estate | 2,277,476 |
| Home furnishings | 125,000 |
| | |
| Total assets | 3,844,634 |

The real estate assets were broken down as follows:

| Real Estate | Acquisition Cost | Accumulated Depreciation | Net Book Value | Value |
|---|---|---|---|---|
| Personal residence | $405,000 | -- | -- | $405,000 |
| Fox Field Bldg. | 423,321 | $116,775 | $306,546 | -- |
| Fox Field equip. | 72,000 | 45,530 | 26,470 | -- |
| El Monte Bldg. | 793,279 | 187,201 | 606,078 | -- |
| El Monte Bldg. points | 8,000 | 1,467 | 6,533 | -- |
| Subtotal | -- | -- | -- | 945,627 |
| | | | | |
| CRV | 721,000 | 721,000 | -- | -0- |
| | | | | |
| WASU rental, land | 40,000 | -0- | 40,000 | -- |
| WASU rental, rental | 185,000 | 23,825 | 161,175 | -- |
| Subtotal | -- | -- | -- | 201,175 |
| | | | | |
| Ford dealership: | | | | |
| land | 111,334 | -0- | 111,334 | -- |
| bldg. | 684,009 | 69,669 | 614,340 | -- |
| computer | 52,496 | 52,496 | -0- | -- |
| Subtotal | -- | -- | -- | 725,674 |
| | | | | |
| Real estate total | -- | -- | -- | 2,277,476 |

The second joint net worth schedule listed the following

liabilities:

| Liabilities | Value |
|---|---|
| Unsecured bank loans | $71,028 |
| Secured loans | 471,000 |
| Taxes payable | 619,220 |
| Real estate loans: | |
| First Union Mortgage | 401,782 |
| CA-Jon Hangar project loan | 591,140 |
| CRV | 1,712,094 |
| Havasu rental | 160,387 |
| Antelope Valley Ford & Shuttle | |
| Lincoln-Mercury facilities loan | 3,709,959 |
| | |
| Total liabilities | 7,736,610 |

The second joint net worth schedule determined the combined net worth of petitioners to be ($3,891,976).

Mr. Johnson's net worth schedule and Mrs. Johnson's net worth schedule are identical. Mr. Johnson's net worth schedule and Mrs. Johnson's net worth schedule each listed the following assets:

| Assets | Value |
|---|---|
| Savings accounts and/or certificates | $51,669 |
| Checking accounts | 5,011 |
| Investment in dealership | 664,400 |
| Real estate | 1,138,738 |
| Home furnishings | 62,500 |
| Total assets | 1,922,317 |

The real estate assets were broken down as follows:

| Real Estate | Acquisition Cost | Accumulated Depreciation | Net Book Value | Value |
|---|---|---|---|---|
| Personal residence | $405,000 | -- | -- | $202,500 |
| Fox Field Bldg. | 423,321 | $116,775 | $306,546 | -- |
| Fox Field equip. | 72,000 | 45,530 | 26,470 | -- |
| El Monte Bldg. | 793,279 | 187,201 | 606,078 | -- |
| El Monte Bldg. points | 8,000 | 1,467 | 6,533 | -- |
| Subtotal | -- | -- | -- | 472,814 |
| CRV | 721,000 | 721,000 | -- | -0- |
| WASU rental, land | 40,000 | -0- | 40,000 | -- |
| WASU rental, rental | 185,000 | 23,825 | 161,175 | -- |
| Subtotal | -- | -- | -- | 100,588 |
| Ford dealership: | | | | |
| land | 111,334 | -0- | 111,334 | -- |
| bldg. | 684,009 | 69,669 | 614,340 | -- |
| computer | 52,496 | 52,496 | -0- | -- |
| Subtotal | -- | -- | -- | 362,837 |
| Real estate total | -- | -- | -- | 1,138,738 |

Mr. Johnson's net worth schedule and Mrs. Johnson's net worth schedule each listed the following liabilities:

| Liabilities | Value |
|---|---|
| Unsecured bank loans | $35,514 |
| Secured loans | 235,500 |
| Taxes payable | 309,610 |
| Real estate loans: | |
|  First Union Mortgage | 200,891 |
|  CA-Jon Hangar project loan | 295,570 |
|  CRV | 856,047 |
|  Havasu rental | 80,194 |
|  Antelope Valley Ford & Shuttle | |
|   Lincoln-Mercury facilities loan | 1,854,980 |
|  Total liabilities | 3,868,305 |

Mr. Johnson's net worth schedule and Mrs. Johnson's net worth schedule determined the individual net worth of each petitioner to be ($1,945,988).

Essentially, petitioners split the amounts contained on the second joint net worth schedule in half, attributing one-half to Mr. Johnson and the other half to Mrs. Johnson.

Petitioners argue that to satisfy the net worth requirements they only need to submit a statement, supported by an affidavit executed by the moving party, that they meet the net worth requirements. We disagree.

Petitioners were put on notice that respondent was specifically objecting to an award of administrative and litigation costs because petitioners failed to prove they meet the net worth requirements. After a taxpayer is put on notice that the Commissioner is specifically objecting to an award of administrative and/or litigation costs because of the taxpayer's failure to prove his net worth, the taxpayer must provide supporting information (i.e., evidence) to establish his net worth. See Estate of Hubberd v. Commissioner, 99 T.C. 335, 341

(1992); <u>Dixson Intl. Serv. Corp. v. Commissioner</u>, 94 T.C. at 719;
see also <u>McCoy v. Commissioner</u>, T.C. Memo. 1992-423.

Petitioners submitted no evidence supporting the amounts
listed in the various net worth schedules or the statements in
their original motion and supporting affidavits that they meet
the net worth requirements.  Furthermore, respondent submitted
evidence that the land upon which Mr. Johnson's motor vehicle
dealerships are located is Mr. Johnson's sole and separate
property.  Petitioners, in their reply, failed to address whether
this or any other property listed on the various net worth
schedules was separate or community property.  Additionally,
petitioners included half the value of each property in both Mr.
Johnson's net worth schedule and Mrs. Johnson's net worth
schedule.

The various net worth schedules submitted by petitioners
leave doubt as to their veracity.  The first joint net worth
schedule and the second joint net worth schedule are almost $8
million apart as to petitioners' joint net worth as of the date
the petition was filed.  The amounts listed on the second joint
net worth schedule changed by tens of thousands of dollars for
petitioners' checking and savings accounts, changed by hundreds
of thousands of dollars for their investment in the dealership,
and changed by millions of dollars for their real estate from the
amounts listed on the first joint net worth schedule.
Petitioners' liabilities also increased by over $3 million from

the first joint net worth schedule to the second joint net worth schedule.

Additionally, petitioners included an annuity as an asset in the first joint net worth schedule but did not list this asset in the second joint net worth schedule or in their individual net worth schedules. The second joint net worth schedule also included over $600,000 in taxes that was not listed on the first joint net worth schedule. Petitioners did not explain any of these discrepancies.

Petitioners supplied no explanation why their calculations of their net worth as of the time the petition in the case was filed changed so drastically in the less than 2 months between the submission of their original motion (which contained the first joint net worth schedule) and their reply to respondent's objection (which contained the second joint net worth schedule and the individual net worth schedules).

Under the circumstances present in this case, we do not feel compelled to accept petitioners' unsubstantiated, conclusory, and self-serving assertion that they meet the net worth requirements.[6] See Estate of Hubberd v. Commissioner, supra; Dixson Intl. Serv. Corp. v. Commissioner, supra; see also McCoy

---

[6] On Apr. 12, 1999, petitioners filed a "Statement of Errata" in which they state that their joint net worth schedules contained several errors due to "misunderstandings" and "miscommunications". Petitioners attached a third joint net worth schedule that listed their combined net worth as $1,097,312. Petitioners submitted no evidence supporting the amounts listed in this schedule. We believe that this submission further supports our conclusions in this case.

v. Commissioner, supra; cf. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).  We conclude that petitioners have failed to prove they meet the net worth requirements necessary to be a "prevailing party" under section 7430(c)(4).

In light of our holding that petitioners failed to prove they meet the net worth requirements, we need not address whether (1) respondent's position was substantially justified; (2) petitioners unreasonably protracted the Court's proceeding; or (3) the amounts of administrative and litigation costs claimed by petitioners are reasonable.

Accordingly, we hold that petitioners are not entitled to an award of administrative or litigation costs.

To reflect the foregoing,

An appropriate order will be issued.