T.C. Memo. 2013-276

UNITED STATES TAX COURT

WILLIAM D. FOOTE AND ELIZABETH R. FOOTE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12271-12.               Filed December 9, 2013.

Ps seek reasonable administrative costs pursuant to I.R.C. sec.
7430(f)(2), which were incurred in connection with tax years
previously before this Court.  Stipulated decisions were entered in all
of those prior cases but were silent as to an agreement on reasonable
administrative and litigation costs.  Ps did not file motions for an
award of reasonable administrative and litigation costs before the
decisions in those cases became final.

Held:  The doctrine of res judicata applies, and Ps are not
entitled to an award of reasonable administrative costs under I.R.C.
sec. 7430(f)(2).

<u>Joseph E. Mudd</u>, for petitioners.

<u>Louis B. Jack</u>, for respondent.

[*2]                    MEMORANDUM OPINION

WHERRY, <u>Judge</u>:  Petitioners filed a petition seeking administrative costs under section 7430(f)(2).[1]  The matter is currently before us on respondent's motion for summary judgment under Rule 121, to which petitioners object.

<u>Background</u>[2]

This case began in 1996 with an audit of petitioners' 1992 tax return.  The revenue agent, Beverly Smith, conducted an initial interview with petitioners.  She then concluded, on the basis of her personal observations regarding their standard of living and their reported income, that there was a material possibility that

---

[1]Unless otherwise noted, all section references are to the Internal Revenue Code of 1986 as amended and in effect for the relevant period.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Because this case is before us on a motion for summary judgment, our recitation of the background is derived from the Court's records in the previous litigation and the filed pleadings, documents, and sworn affidavits of the parties in this case.  It does not constitute a finding of facts in the trial setting context.  Most of this background is culled from petitioners' opposition because respondent's motion and supporting documents discussed little in the way of the history or facts of the prior deficiency cases.  We mention this because the facts, as alleged by petitioners, do not cast respondent in a positive light.  These facts, if true, are indicators of intemperate actions by respondent's revenue agent and group manager.  However, these facts do not help petitioners because, as discussed <u>infra</u>, the law dictates summary judgment for respondent.

**[*3]** petitioners had substantially underreported their income. Ms. Smith therefore expanded the scope of the audit to include the 1993 through 1996 tax years.

At its zenith, the audit encompassed petitioners' 1992 through 2000 tax years and at least two flowthrough entities. In 1999 Ms. Smith, through her group, caused to be issued the first 30-day letter and accompanying examination report for the tax years 1992 through 1996, proposing total deficiencies of $27,832,527 and penalties and interest computed to December 12, 1999, of $30,029,937, for a total amount due of $57,862,464. Petitioners filed a written protest seeking administrative review by the Internal Revenue Service (IRS) Appeals Office (Appeals).[3] This first appeal did not make it to IRS Appeals because the revenue agent's group manager pulled the case for further development. Rather, petitioners' representatives, Ms. Smith, and Ms. Smith's manager held a two-day meeting, after which Ms. Smith issued a second 30-day letter in October 2000. This letter proposed total deficiencies for the 1992-96 tax years of $55,392,886 and interest and penalties of $68,760,731, for a total amount due of $124,153,617.

Petitioners again appealed, and Appeals returned the file to the Examination Division for further development. In June 2003 Ms. Smith issued a third 30-day letter. This letter proposed total deficiencies of $8,685,302 for tax years 1992

---

[3]All dollar amounts are rounded to the nearest dollar unless otherwise noted.

[*4] through 1996, with interest and penalties of $10,669,034. Eventually, despite their Herculean effort[4] to resolve these cases with the revenue agent and her group manager or at Appeals, petitioners received four statutory notices of deficiency, which determined, in the aggregate, $4,005,096 in tax deficiencies and $1,505,632 in additions to tax and penalties. Petitioners' flowthrough entity, FSW Associates, LTD (FSW), received a notice of final partnership administrative adjustment (FPAA), which increased FSW's income by more than $13.2 million. Petitioners timely petitioned the Tax Court for redetermination in response to all notices.

Petitioners and respondent ultimately submitted stipulated decision documents in each of these five cases, and the Court entered decisions accordingly. Decision in petitioners' case covering the 1992, 1993, and 1994 tax years was entered on May 3, 2011. Decisions in petitioners' other three cases were entered on May 2, 2011. Decision in the FSW case was entered on November 16, 2009. The total of the agreed Federal income tax deficiencies, including all four of petitioners' cases for all years, was $310,877 plus $64,302 in section 6651(a)(1) additions to tax for the 1992 through 1994 tax years. The

---

[4]Petitioners attach to their opposition to summary judgment exhibits rife with allegations of improper behavior on the part of the revenue agent. As illustration, petitioners contend that the revenue agent refused to consider proffered and documented explanations and that she made numerous adjustments without any credible factual basis or justification.

[*5] stipulated decision ultimately entered in the FSW case reflected an agreement for no change to FSW's partnership Federal income tax return for the year 1995 as filed. The total settlement amount is a small fraction of the original proposed $27,832,527 of tax deficiencies plus interest and penalties of about $30 million, the intermediate proposed $55,392,886 tax deficiencies plus interest and penalties of about $68.8 million, and even the still later proposed $8,685,302 of tax deficiencies plus interest and penalties of about $10.7 million. Even the statutory notices of deficiency reflected in the aggregate an excessively large amount, slightly over $4 million of tax deficiencies and $1.5 million in additions to tax and penalties, when compared with the ultimate stipulated deficiencies.[5]

The parties made no mention of administrative or litigation costs in any of the stipulated decision documents. Petitioners did not file any motion in any of the cases seeking an award pursuant to section 7430 of these costs, nor did they file motions to vacate the decisions.[6] The decisions in all of the cases became

[5]The IRS no longer has a review staff which might have corrected the apparent overreach by its Examination Division in this case. The IRS instead relies on the revenue agent and the group manager with, in some cases, counsel review to avoid excessive "claims" in examination reports and statutory notices of deficiency.

[6]Petitioners did attempt to file motions to reopen the prior cases for the purpose of pursuing administrative costs more than a year after the decisions had

(continued...)

**[*6]** final 90 days after their entry per sections 7481(a)(1) and 7483, which in all the cases occurred on or before May 5, 2011.

On February 12, 2010, petitioners sent a letter to the IRS "to preserve any rights that * * * [petitioners], individually, or the entity, FSW may have for recovery of attorneys' fees as a result of the Settlement and Docket No. 7330-06." On May 2, 2011, petitioners submitted a letter titled "Request for Administrative Fees, Attorneys' Fees and Costs". The IRS never responded to this letter. On May 15, 2012, petitioners filed a petition seeking $734,183.04 in administrative costs plus whatever fees they incur in this litigation.[7] Petitioners claimed, inter alia, that they had prevailed with respect to the amounts in controversy and the most significant issues and that respondent's position was not substantially justified.

## Discussion

"Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials." Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). A party moving for summary judgment bears the burden of

---

[6](...continued)
been entered and had become final, but the Court rejected these filings.

[7]Petitioners also have pending a separate petition seeking review of respondent's denial of their request to abate interest.

**[\*7]** demonstrating that no genuine issue of material fact exists and that he or she is entitled to judgment as a matter of law.  <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. 518, 520 (1992), <u>aff'd</u>, 17 F.3d 965 (7th Cir. 1994).  Facts are viewed in the light most favorable to the nonmoving party.  <u>Dahlstrom v. Commissioner</u>, 85 T.C. 812, 821 (1985).  Where a motion for summary judgment has been properly made and supported by the moving party, the nonmoving party "may not rest upon the mere allegations or denials" contained in that party's pleadings but must by affidavits or otherwise "set forth specific facts showing that there is a genuine dispute for trial."  Rule 121(d).

Petitioners filed their petition pursuant to section 7430(f)(2) seeking administrative costs incurred with respect to respondent's examination of the tax years that eventually led to the prior cases.  Respondent, however, contends that under the doctrine of res judicata, petitioners are precluded from seeking these costs.[8]  We agree with respondent.  The statute and our caselaw are on all fours with respondent's position, and petitioners' arguments to the contrary are unpersuasive.  <u>See</u> <u>Gustafson v. Commissioner</u>, 97 T.C. 85 (1991).

---

[8]Respondent properly raised the affirmative defense of res judicata in his answer.

**[*8]**   The statutory framework for an award of administrative and litigation costs is found in section 7430.  Section 7430(a) provides:

SEC. 7430.  AWARDING OF COSTS AND CERTAIN FEES.

(a) In General--In any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or a settlement for--

(1) reasonable administrative costs incurred in connection with such administrative proceeding within the Internal Revenue Service, and

(2) reasonable litigation costs incurred in connection with such court proceeding.

If a taxpayer is unsuccessful at the administrative level but successful in the court proceeding, the taxpayer may recoup costs incurred during both the administrative and the court proceedings if the taxpayer meets the requirements of section 7430.[9]

Congress left it up to the courts to develop procedures for claiming costs in such a scenario.  Dixson Int'l Serv. Corp. v. Commissioner, 94 T.C. 708, 710 (1990) (citing Sanders v. Commissioner, 813 F.2d 859, 882 (7th Cir. 1987)). Rules 230 to 233 of title XXII govern the procedure for recouping such costs in

---

[9]Sec. 7430 requires, inter alia, that the taxpayer be the prevailing party, sec. 7430(c)(4)(A), that the taxpayer exhaust administrative remedies, sec. 7430(b)(1), that the taxpayer not unnecessarily protract the proceedings, sec. 7430(b)(3), and that the taxpayer meet certain net worth requirements, sec. 7430(c)(4)(D).

**[*9]** the U.S. Tax Court. These Rules describe the requirements within which a taxpayer must make a claim. They specify that if the parties agree on a settlement of all issues including administrative and litigation costs, the parties must include in the stipulated decision documents the award of those costs. Rule 231(a); Manchester Grp. v. Commissioner, T.C. Memo. 1994-604, 1994 WL 692750, at *7, rev'd on other grounds, 113 F.3d 1087 (9th Cir. 1997). If the parties have not settled the reasonable administrative and litigation cost issues, the taxpayer must file a motion for costs within 30 days of service of a written opinion determining the issues in the case or service of the pages of the transcript that contain findings of fact or opinion stated orally pursuant to Rule 152. Rule 231(a)(2)(A) and (B). If the parties have settled all issues but the claim for costs, the taxpayer must also file a motion along with the stipulation of settled issues. Rule 231(b) and (c).[10] Petitioners did none of these things in the prior cases, and decisions in those cases became final a considerable time ago.

---

[10]In addition, this Court permits a motion for costs filed after dismissal of a case for lack of jurisdiction. Sponza v. Commissioner, 844 F.2d 689, 690 (9th Cir. 1988); Weiss v. Commissioner, 88 T.C. 1036, 1041 (1987). But see Sanders v. Commissioner, 813 F.2d 859, 862 (7th Cir. 1987) (holding that the Tax Court had no jurisdiction to hear a sec. 7430 motion for costs after entering a decision dismissing the case for lack of jurisdiction). We have also held motions for costs timely when filed after a stipulation of settled issues which was silent as to costs, but before the entry of decision. Dixson Int'l Serv. Corp. v. Commissioner, 94 T.C. 708, 711-712 (1990).

**[*10]** The other avenue to recover at least administrative costs through a court proceeding is found in section 7430(f)(2).[11]  This section provides in part:  "A decision granting or denying (in whole or in part) an award for reasonable administrative costs under subsection (a) by the Internal Revenue Service shall be subject to the filing of a petition for review with the Tax Court".  Sec. 7430(f)(2).  This express grant of jurisdiction allows us to review the IRS' rejection of or nonaction on a request for administrative costs incurred by a prevailing party.[12]

Petitioners have at least one major obstacle to overcome.  Our precedent is on all fours with respondent's position that res judicata prevents petitioners' recovery.  We have held "that the doctrine of res judicata bars an action for

---

[11]The prevailing party can seek costs incurred on or after the earliest of

(i) the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue Service Office of Appeals; (ii) the date of the notice of deficiency; or (iii) the date on which the 1st letter of proposed deficiency which allows the taxpayer an opportunity for administrative review in the Internal Revenue Service Office of Appeals is sent.

Sec. 7430(c)(2) (flush language).

[12]If the IRS does not respond to a taxpayer's request for administrative costs, the taxpayer may consider that failure to be "a decision of the * * * [IRS] denying an award for reasonable administrative costs."  Sec. 301.7430-2(c)(6), Proced. & Admin. Regs.; see also Bent v. Commissioner, T.C. Memo. 2009-146, slip op. at 10 ("IRS non-action for 6 months is considered an adverse decision that may be petitioned under section 7430(f)(2)[.]").

[*11] administrative costs under section 7430(f)(2) to the extent that the recovery of such costs could have been pursued in a prior deficiency, liability, revocation, or partnership case." Gustafson v. Commissioner, 97 T.C. at 93; see also Kim v. Commissioner, T.C. Memo. 2002-49, slip op. at 7 (applying Gustafson to similar facts), aff'd, 49 Fed. Appx. 446 (4th Cir. 2002).

In Gustafson v. Commissioner, 97 T.C. at 86, the parties submitted a stipulated decision in the taxpayers' favor. The taxpayers, however, made no motion for costs pursuant to Rules 230 through 233, nor did the stipulated decision documents provide for administrative and litigation costs. Id. The taxpayers later filed a petition seeking administrative costs under section 7430(f)(2). Id. The taxpayers sought costs associated with the 1986 tax year which was the subject of the prior Tax Court litigation. Id. We held that because the taxpayers "could have made a claim for administrative costs" in the prior case, "res judicata bars * * * [the taxpayers] from litigating in the present case administrative costs that could have been litigated in the previous case." Id. at 92.

Petitioners could have made their claim for administrative and litigation costs in their prior Tax Court proceedings. Because they did not, they are now barred from pursuing this claim. Petitioners' arguments to the contrary--that we

**[\*12]** should overrule <u>Gustafson</u> or create some sort of equitable exception--are unpersuasive.

Petitioners contend that <u>Gustafson</u> should not apply because section 7430 provides only that an award "may" be made as part of the decision or judgment in a case. Sec. 7430(f)(1). But as we have previously stated: "[T]he statute gives to the court, and not to the taxpayer, the prerogative of specifying how an order disposing of a motion for litigation costs should be handled." <u>Manchester Grp. v. Commissioner</u>, 1994 WL 692750, at \*5. We stated further that "[t]his Court has clearly articulated its intent to address, in every case, the substantive issues as well as the issue of litigation costs in a single decision." <u>Id.</u> at \*6. Subsequently we noted:

> The Court has an interest in fostering respect for the judicial process and accomplishing orderly disposition of its workload. In part, the Court seeks to foster respect for the judicial process through the evenhanded enforcement of its Rules, which are designed to secure the just, speedy, and inexpensive determination of every case. \* \* \* If a party, in the pursuit of its own agenda, is permitted to disregard the procedures established by this Court, unfairness to others and disruption of the Court's processes occur.

<u>Manchester Grp. v. Commissioner</u>, T.C. Memo. 1997-576, slip op. at 14 (citations omitted). Thus, while the statute does indeed use the word "may", we have exercised our prerogative in establishing procedures that allow a taxpayer to seek

**[\*13]** administrative and litigation costs while fostering respect for the judicial process and ensuring orderly disposition of our workload.

Second, petitioners urge us to overturn Gustafson and hold that section 7430 creates an exception to the doctrine of res judicata. In Gustafson, we dismissed a similar argument. We were "not persuaded by petitioners that the creation of a specific statutory remedy such as the one provided by section 7430(f)(2) does or should preclude the application of common-law doctrines such as res judicata." Gustafson v. Commissioner, 97 T.C. at 92. Our reasoning in Gustafson has stood for over 20 years, and given the doctrine of stare decisis, petitioners have not convinced us otherwise.

Third, petitioners ask us to carve out an exception to Gustafson based on the particular facts of their cases. Petitioners allege the following factual bases for such an exception: (1) they had numerous cases that could have been or were at one point consolidated but were settled at different times, (2) no trials occurred in their cases, (3) they had not engaged in any trial preparation, and (4) they put no prayer for administrative or litigation costs in their petitions.

The first alleged difference ignores section 7430(e). That section normally requires the Court (except where it determines in its discretion it would not be appropriate) to treat as one proceeding actions that could have been joined or

[*14] consolidated or cases involving a return or returns of a taxpayer that could have been joined in a single court proceeding. It also ignores Rules 230 through 233, which allow the parties to submit a stipulation of settled issues along with a motion for costs. Petitioners could then have requested that the Court treat that proceeding as joined with the other proceedings for the purposes of resolving the motion, thus addressing petitioners' concerns about judicial economy.

Petitioners' second alleged factual difference ignores the fact that no trial was held in Gustafson either. To the extent petitioners are contending that the lack of a trial complicates their proving entitlement to administrative and litigation costs, the Rules allow either party to request the Court, at its discretion where there are bona fide factual disputes, to conduct an evidentiary hearing. Rule 232(a)(2).

Petitioners' third factual difference is that they engaged in no trial preparation. Presumably petitioners believe that because there was no trial preparation, they incurred no costs and it would be inappropriate to seek the administrative costs in this context. Nonetheless, section 7430 defines reasonable litigation costs in part as "reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding". Sec. 7430(c)(1)(B)(iii).

**[*15]** Surely the negotiations to settle the litigation were "in connection with the court proceeding".

Petitioners' fourth factual difference is that their petitions in the prior cases did not include prayers for attorney's fees and litigation costs. That is true because Rule 34(b) states: "A claim for reasonable litigation or administrative costs shall not be included in the petition in a deficiency or liability action." Thus, even though the taxpayers in Gustafson included such a request in their petition, this request had no impact on our holding. Rather, petitioners must follow this Court's procedures, which generally require taxpayers to make such requests after the substantive issues have been resolved. Rule 231; see also Failla v. Commissioner, T.C. Memo. 1986-39 ("In general, the time for making such claims is after the substantive issues have been resolved.").

Finally, petitioners urge us to exercise equitable powers and decline to apply the rule of res judicata in this case. As alleged by petitioners, the actions of the revenue agent, abetted by the group manager, may have been inappropriate, and we in no way condone inappropriate or un-called-for actions. However, those actions, while significantly contributing to petitioners' lengthy audit and substantial legal bills, are not the proximate cause of petitioners' inability to obtain an award of reasonable administrative and litigation costs. Rather, it was

**[\*16]** the unfamiliarity of petitioners and their advisers with our Rules or their inadvertent failure to follow them. As the Supreme Court noted in reversing a Court of Appeals that had attempted to create an exception to the doctrine of res judicata:

> The doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply "no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of <u>res judicata</u>." <u>Heiser v. Woodruff</u>, 327 U.S. 726, 733 (1946). \* \* \* We have stressed that "[the] doctrine of <u>res judicata</u> is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts. . . ." <u>Hart Steel Co. v. Railroad Supply Co.</u>, 244 U.S. 294, 299 (1917). \* \* \*

<u>Federated Dep't Stores, Inc. v. Moitie</u>, 452 U.S. 394, 401 (1981). Accordingly, we decline to weigh the equities of this particular case and will apply the doctrine of res judicata. Petitioners are not entitled to an award of reasonable administrative costs.

**[*17]**  The Court has considered all of petitioners' contentions, arguments, requests, and statements.  To the extent not discussed herein, the Court concludes that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order and</u>

<u>decision will be entered</u>.