T.C. Memo. 2015-187

UNITED STATES TAX COURT

WILLIAM D. FOOTE AND ELIZABETH R. FOOTE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1176-13.                    Filed September 22, 2015.

<u>Joseph E. Mudd</u>, for petitioners.

<u>Vladislav M. Rozenzhak</u> and <u>Louis B. Jack</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  On December 7, 2012, respondent issued a notice of final

determination denying petitioners' claim under section 6404[1] for abatement of

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code as amended, and all Rule references are to the Tax Court Rules of
Practice and Procedure.

[*2] interest on income tax liabilities for tax years 1992, 1993, 1996, 1999, and 2000 (years at issue). Petitioners timely petitioned this Court under section 6404(h) and Rule 280 seeking review of respondent's determination. The issue for decision is whether respondent's denial of petitioners' claim for abatement of interest was an abuse of discretion. We hold that it was not.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts and accompanying exhibits are incorporated herein by this reference. At the time the petition was filed, petitioners resided in Newport Beach, California.

The Footes

Petitioner William D. Foote is a real estate developer. During the years at issue Mr. Foote worked for his own companies and in partnership with outside entities. Mr. Foote had ownership interests directly or indirectly in over 20 entities. From 1993 to 1996 Mr. Foote worked as an employee of the "Las Vegas Project", where he earned an annual salary of approximately $500,000, plus expenses.

Petitioner Elizabeth R. Foote operated interior design businesses in Nevada and California.

**[*3]** To conduct their businesses, petitioners owned and operated numerous tiered pass-through entities throughout the years at issue.[2]

Petitioners resided in Las Vegas, Nevada, when the initial audit began in 1995.  Sometime in 1998 petitioners moved to San Francisco, California.  The following year petitioners moved to Newport Beach, California.

The Audits

Three of respondent's revenue agents conducted separate audits of returns of petitioners and their numerous pass-through entities.

The first audit, conducted by Revenue Agent Beverly Smith (Agent Smith), was for petitioners' tax years 1989, and 1992 through 1996, inclusive.  The second audit, for petitioners' tax years 1997 through 1999, was conducted by Revenue Agent Michael Brown (Agent Brown).  Revenue Agent William Brennan (Agent Brennan) conducted the final audit, for petitioners' tax year 2000.

First Audit

In December 1994 respondent received petitioners' late-filed 1992 Form 1040, U.S. Individual Income Tax Return.  Respondent subsequently assessed a

[2]Returns of at least 12 entities related to petitioners were audited.  Many of the entities were tiered structures; and when the entities collapsed, petitioners owned a controlling interest in each entity.  The record is unclear as to the total number of entities petitioners participated in.

**[*4]** section 6651(a)(1) addition to tax and interest. In response, Gregory Krug, a certified public accountant and petitioners' representative under a Form 2848, Power of Attorney and Declaration of Representative, filed Form 1040X, Amended U.S. Individual Income Tax Return, indicating that petitioners owed no tax for 1992. In addition, Mr. Krug explained that petitioners failed to timely file because Design Centers, an S corporation in which petitioners own a 100% interest, was unable to timely file, delaying receipt of petitioners' Schedule K-1, Partner's Share of Income, Credits, Deductions, Etc.

Agent Smith began auditing petitioners' 1992 tax return in September 1995. On September 27 Agent Smith sent petitioners a letter to inform them of the audit and to schedule an initial interview. An initial interview was held at petitioners' residence at the time in Las Vegas, Nevada. Petitioners were not present for the initial interview. Petitioners' secretary, although present, was not authorized to represent them. Agent Smith was permitted to view some but not all documents relevant to the 1992 audit. Agent Smith also reviewed county records and determined that petitioners did not report sufficient income to support their "lavish" lifestyle.

Agent Smith opened the audit to include returns of various entities related to petitioners. The audit was expanded to include petitioners' and entities' returns

[*5] for tax years 1989, 1992, 1993, 1994, 1995, and 1996. Audits for tax years 1993, 1994, 1995, and 1996 were subsequently opened before any other tax year was closed or resolved. During her audit of petitioners' returns, Agent Smith issued multiple Information Document Requests (IDRs) requesting various information and documentation. Petitioners failed to fully and timely respond to the IDRs.

On December 8, 1995, respondent received petitioners' Form 1040 for tax year 1993. In February 1996 Mr. Krug explained that petitioners' failed to file timely because two S corporations in which petitioners maintained control failed to file on time. Mr. Krug asked for a waiver of the failure to file and failure to pay additions to tax assessed for 1993. The request for waiver was denied because petitioners' 100% control over the S corporations contributed to the late filing and it was not established that ordinary business care and prudence was exercised to get the returns filed as soon as possible after the due date.

The record indicates that Mr. Krug failed to fully cooperate, rescheduling numerous meetings with Agent Smith and failing to provide information requested. In a memo dated July 29, 1996, Mr. Krug informed Agent Smith that he would not supply her with any data for 1993 (other than copies of all relevant returns) until she completed her audit for petitioners' 1992 tax year. In a letter

**[*6]** dated November 7, 1996, Mr. Krug explained that he was unable to obtain requested information on Grand Design Interiors, one of petitioners' S corporations, because the records could not be found and he was preoccupied with another client's matter. In a fax dated June 25, 1997, Mr. Krug stated: "I have not yet been able to locate the loan docs re: SWD's, Footlan IV and Footlan V's loans to shareholders. I agree that these docs are very relevant, and we will continue to search for them. I suspect that they were misplaced in the move to NV."[3] In a July 17, 1997 fax, Mr. Krug informed Agent Smith that "there will be a delay in getting additional information."

In April 1998 petitioners changed from Mr. Krug to Hugh Saddington, a certified public account and petitioners' representative under a power of attorney, because Mr. Krug was arrested.[4] Mr. Krug's office closed after his arrest. Thus, petitioners had to obtain permission to retrieve records from Mr. Krug's office. Because Mr. Saddington could not readily understand all of the records obtained, he reconstructed various accounting entries.

---

[3]SWD, Footlan IV, and Footlan V are all entities in which petitioners own a controlling interest.

[4]Mr. Krug was arrested on unrelated charges.

**[*7]** In 1999 Agent Smith was instructed by management to close her audit for petitioners' tax years 1992 through 1996. On November 12, 1999, respondent issued petitioners a 30-day letter and a Form 4549A-CG, Income Tax Examination Changes, identifying adjustments to petitioners' income tax liabilities. Those adjustments to petitioners' tax liability included: (1) flow-through income from an entity that Agent Smith determined maintained its S corporation status, (2) adjustments disallowing a tax-free corporate reorganization, (3) option payments totaling $1,039,000,[5] (4) an approximately $13 million adjustment from a related TEFRA partnership, and (5) a $55 million distribution to petitioners in a business dissolution. The Form 4549A-CG indicated that petitioners owed total additional income tax of $57,862,463 for tax years 1992 through 1996 inclusive.

After the first 30-day letter was issued in November 1999, petitioners requested an extension of time to file protest letters. Petitioners were granted an extension until March 3, 2000. Sometime in February 2000 Mr. Saddington requested a meeting with Agent Smith and her manager. Agent Smith's manager was not available until March 20. The deadline for petitioners' protest letters was extended a second time, to July 28. On July 26 petitioners again requested an extension of time to file protest letters. A third request and extension, to August 2,

---

[5]All dollar amounts are rounded to the nearest dollar.

[*8] was granted; however, no protest letters were received until August 11. Agent Smith subsequently made changes to the Form 4549A-CG originally issued, increasing the $55 million distribution to $110 million. Respondent issued a second 30-day letter and a revised Form 4549A-CG to petitioners on October 5, 2000. The second 30-day letter determined that petitioners owed total income tax of $124,153,617 for tax years 1992 through 1996, inclusive.

In October 2000 Agent Smith forwarded the case to Appeals in Laguna Niguel, California, with petitioners' protest letters. In January 2002 Appeals returned the case, along with additional information provided by petitioners, to Agent Smith for further development.

On June 5, 2003, respondent issued a third 30-day letter substantially reducing petitioners' total tax liability to $19,354,336 for tax years 1992 through 1996, inclusive.

Second Audit

Agent Brown conducted an audit of petitioners' income tax returns for tax years 1997, 1998, and 1999, beginning in 2000.

Mr. Saddington continued to represent petitioners during Agent Brown's audit. Over the course of the second audit, Mr. Saddington postponed and

[*9] rescheduled multiple meetings and failed to timely provide information. In January 2001 Agent Brown's manager sent a letter to Mr. Saddington stating:

> We are concerned that the examination is not progressing in a proper and timely manner due to numerous postponements. On 12/18/00, you promised the necessary documents would be made available on 01/24/01. On 1/16/00, the examiner agreed to your request to postpone the next meeting until 01/31/01. On 01/29/01, you left a message to postpone again to an indefinite date due to other matters.

In October 2002 Agent Brown closed his audit of petitioners' income tax returns for 1997, 1998, and 1999 unagreed.

Third Audit

Agent Brennan audited petitioners' income tax return for tax year 2000. Petitioners and Mr. Saddington were first contacted about the tax year 2000 audit in October 2002. Mr. Saddington canceled or postponed five meetings with Agent Brennan. In October 2003 Agent Brennan issued petitioners a letter proposing adjustments for their 2000 income tax liability.

The Appeals Hearings

Petitioners' first appeal for tax years 1992 through 1996 was held in Laguna Niguel, California, from October 2000 until January 2002. Mr. Saddington did not timely provide information to Appeals Officer Marcia Hamm (Officer Hamm)

**[*10]** because he was sidetracked with work from other clients, petitioners had moved offices, and he had to obtain various items from storage.

Appeals returned the case and the additional information provided during hearings to Agent Smith for further development. On June 5, 2003, respondent issued a third 30-day letter and Form 4549A-CG to petitioners eliminating the $110 million adjustment. Petitioners protested the third 30-day letter, and the case went back to Appeals in January 2004.

Appeals Officers Jon Hales (Officer Hales) and Terry Anderson (Officer Anderson) were assigned to work petitioners' appeal for tax years 1992 through 2000. Officer Anderson worked to reach a settlement with petitioners until his retirement in December 2004, whereupon Officer Hales took over settlement negotiations. Officer Anderson recommended Officer Hales adopt his analysis up to that point. Officer Hales declined to adopt Officer Anderson's recommendations. Petitioners and Officer Hales met several times, and petitioners postponed several meetings. Appeals ceased on September 27, 2005, because no settlement could be reached.

Between March 21 and July 13, 2006, respondent issued three statutory notices of deficiency for tax years 1992 through 2000, inclusive.

**[\*11]** <u>Tax Court Proceedings</u>

Petitioners timely petitioned this Court for redeterminations for the years at issue and other years which are not at issue in this case.

During the pendency of those cases, petitioners' and respondent's counsel met at least 10 times to resolve disputed issues. At those meetings petitioners produced additional documentation. On the basis of documents and information petitioners provided, respondent conceded many issues that were previously unresolved. For the remaining unsubstantiated claims, respondent's counsel computed a settlement based on reasonable percentages and estimates. Stipulated decision documents reflecting the redetermined deficiencies for tax years 1992 through 2000 were entered in February 2011.

The stipulated decisions redetermined a total tax liability of $239,665 and additions to tax under section 6651(a)(1) of $54,166[6] for the years at issue.

<u>Claim for Interest Abatement</u>

On September 26, 2011, petitioners filed five Forms 843, Claim for Refund and Request for Abatement, in which they requested abatement of interest on their

---

[6]Sec. 6651 additions to tax were applied only for the 1992 and 1993 tax years at issue.

[*12] income tax liabilities for the years at issue. In their Forms 843 petitioners requested abatement of interest that accrued from November 1999 through 2011.

On December 7, 2012, respondent issued a notice of final determination to petitioners, denying in full their request for interest abatement. Petitioners timely filed a petition in this Court requesting review of respondent's determination to deny their request for interest abatement.

Nowhere does the record indicate that petitioners ever made a deposit at any time to reduce or suspend interest owed.

OPINION

A. Abatement of Interest in General

For tax years beginning on or before July 30, 1996, section 6404(e)(1)(A) provides that the Commissioner may, at his discretion, abate the assessment of interest on any deficiency in tax attributable, in whole or in part, to any error or delay by an IRS officer or employee in performing a "ministerial" act. See Lee v. Commissioner, 113 T.C. 145, 148 (1999); Woodral v. Commissioner, 112 T.C. 19, 25 (1999). For tax years beginning after July 30, 1996, the Commissioner is permitted to abate interest on any deficiency in tax attributable, in whole or in part, to any unreasonable error or delay by an IRS officer or employee in performing a "managerial" or "ministerial" act. Woodral v. Commissioner, 112 T.C. at 25. For

**[*13]** purposes of the preceding, an error or delay shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and after the IRS has contacted the taxpayer in writing with respect to such deficiency or payment.[7]  See sec. 6404(e)(1).[8]

Thus, for petitioners' tax years 1992, 1993, and 1996 abatement of interest is available only if a ministerial error occurred, while for tax years 1999 and 2000 relief is available if an unreasonable ministerial or managerial error is shown.

A "ministerial act" is a procedural or mechanical act that does not involve the exercise of judgment or discretion and occurs during the processing of a taxpayer's case after all the prerequisites to the act, such as conferences and review by supervisors, have taken place.  See Lee v. Commissioner, 113 T.C. at 150; sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg.

---

[7]Respondent's first contact with petitioners was the September 26, 1995, letter.

[8]In 1996 sec. 6404(e) was amended by the Taxpayer Bill of Rights 2 (TBOR 2), Pub. L. No.104-168, sec. 301, 110 Stat. at 1457 (1996), to permit abatement with respect to "unreasonable" error or delay in performing a "ministerial or managerial" act.  The amendment is effective for tax years beginning after July 30, 1996; thus it is inapplicable for tax years at issue 1992, 1993, and 1996.  See Woodral v. Commissioner, 112 T.C. 19, 25 n. 8 (1999).

**[*14]** 30163 (Aug. 13, 1987);[9] sec. 301.6404-2(b)(2), Proced. & Admin. Regs. In contrast, a decision concerning the proper application of Federal tax law, or other applicable Federal or State law, is not a ministerial act. See sec. 301.6404-2T(b)(1), Temporary Proceed. & Admin. Regs., supra; sec. 301.6404-2(b)(2), Proced. & Admin. Regs. The mere passage of time does not establish error or delay in performing a ministerial act. Lee v. Commissioner, 113 T.C. at 150.

Section 6404(e) is not intended to be routinely used to avoid payment of interest; rather Congress intended that interest be abated "where failure to abate interest would be widely perceived as grossly unfair". H.R. Rept. No. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844; S. Rept. No. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208.

A "managerial" act is an administrative act that occurs during the processing of a taxpayer's case and that involves the temporary or permanent loss

---

[9]The final regulations under sec. 6404 were issued on December 18, 1998, and generally apply to interest accruing with respect to deficiencies or payments of tax described in sec. 6212(a) for tax years beginning after July 30, 1996. See sec. 301.6404-2(d)(1), Proced. & Admin. Regs. As a result, sec. 301.6404-2T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987), applies and is effective for interest accruing with respect to deficiencies for those taxable years beginning after December 31, 1978, but on or before July 30, 1996. See id. para. (c).

[*15] of records or the exercise of judgment or discretion relating to personnel management.  Sec. 301.6404-2(b)(1), Proced. & Admin.

To qualify for abatement of interest under section 6404(e), the taxpayer must:  (1) identify an error or delay by the IRS in performing a ministerial or managerial act; (2) establish a correlation between the error or delay by the IRS and a specific period for which interest should be abated; (3) show that the taxpayer would have paid his or her tax liability earlier but for such error or delay.  See sec. 6404(e)(1); Ibrahim v. Commissioner, T.C. Memo. 2011-215, slip op. at 2; Braun v. Commissioner, T.C. Memo. 2005-221, slip op. at 4-5; sec. 301.6404-2, Proced. & Admin. Regs.; sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., supra.

B.  Jurisdiction

Section 6404(h)(1) provides this Court with jurisdiction to review denials of requests for abatement of interest under an abuse of discretion standard.[10]  This

_____

[10]The provision for Tax Court review of interest abatement determinations was enacted as sec. 6404(g).  TBOR 2 sec. 302(a), 110 Stat. at 1457.  The provision was then redesignated, first as sec. 6404(i) by the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, secs. 3305(a), 3309(a), 112 Stat. at 743, 745, and then as sec. 6404(h) by the Victims of Terrorism Tax Relief Act of 2001, Pub. L. No. 107-134, sec. 112(d)(1)(B), 115 Stat. at 2435 (2002).  The provision as enacted and redesignated applies to requests for abatement after July 30, 1996.  TBOR 2 sec. 302(b), 110 Stat. at 1458.

(continued...)

**[\*16]** Court will give due deference to the Commissioner's exercise of discretion. Lee v. Commissioner, 113 T.C. at 149-150; Woodral v. Commissioner, 112 T.C. at 23. An action constitutes an abuse of discretion if performed in a manner that is arbitrary, capricious, or without sound basis in fact or law. Woodral v. Commissioner, 112 T.C. at 23.

This Court has jurisdiction to review the Commissioner's failure to abate interest only after (1) the Commissioner has mailed a notice of final determination not to abate interest under section 6404 and (2) a petition for review of the Commissioner's failure to abate interest is timely filed with the Court (3) by a taxpayer who meets the requirements of section 7430(c)(4)(A)(ii). See Rule 280.

Petitioners satisfy the second and third requirements. In their requests for abatement, however, petitioners requested abatement of interest that accrued from November 11, 1999, through sometime in 2011. In brief submitted to this Court, petitioners seek abatement of interest accruing from September 26, 1995, through February 2, 2011. Because a notice of final determination not to abate interest was never issued for the period of September 26, 1995, through November 10, 1999, we lack jurisdiction to decide whether respondent's refusal to abate interest for

---

[10](...continued)
To avoid confusion, references herein will be to the current designation.

[*17] that period was an abuse of discretion. Thus, our review is limited to the remaining period, November 11, 1999, through February 2, 2011.

C. Years at Issue

As a threshold matter, petitioners allege no ministerial or managerial error or delay attributable to tax years 1999 and 2000. Petitioners argue that tax years 1992 through 1996 remaining unresolved delayed resolution of tax years 1999 and 2000 and thus "some portion of interest should be abated." Abatement of interest is not available absent ministerial or managerial error. Respondent did not abuse his discretion in denying abatement of interest relating to tax years 1999 and 2000.

Because no error or delay is attributable to tax year 1999 or 2000, the relevant years at issue that remain are 1992, 1993, and 1996. Accordingly, only ministerial errors will be considered for petitioners' remaining tax years at issue.[11]

D. Petitioners' Arguments

Petitioners contend that interest should be abated because: (1) the failure to follow the plain meaning of a statute is ministerial error; (2) it would be "grossly unfair" not to abate interest; and (3) Agent Smith acted in bad faith when

---

[11]The triggering date for the applicability of the amendment to sec. 6404(e) is the tax year of the underlying deficiency or payment, not the date of the act. Berry v. Commissioner, T.C. Memo. 2001-323, slip op. at 9.

**[\*18]** determining petitioners' tax liabilities for tax years 1992, 1993, and 1996. We now consider each of petitioners' arguments in turn.

First, petitioners argue that the failure to follow the plain meaning of a statute is ministerial error. To bolster this argument, petitioners rely on the following: Harlow v. Fitzgerald, 457 U.S. 800 (1982) (in the context of immunity, Government officials performing discretionary functions will generally be protected from a damage action, while qualified immunity is not available for pure ministerial acts); an unspecified article in 20 Michigan Law Review No. 8 (June 1922) (citing Grider v. Tally, 77 Ala. 422 (1884) (stating that "[t]he duty is ministerial, when the law exacting its discharge, prescribes and defines the time, mode and occasion of its performance with such certainty that nothing remains for judgment or discretion")); Neal v. Regan, 587 F. Supp. 1558 (N.D. Id. 1984) (in regard to a mandamus case, stating "a ministerial act is one which the law prescribes and defines the duty to be performed with such precision as to leave nothing to exercise of discretion or judgment"); and In re Rugroden, 481 B.R. 69 (Bankr. N.D. Cal. 2012) (holding that applying the plain meaning of the law is a ministerial act in an automatic stay proceeding in bankruptcy). Petitioners conclude that "the failure to follow the law is a ministerial error, just as is failure to apply the law as instructed by superiors or Tech Advisors."

[*19] The cases cited show that where a statute mandates an act that does not require any exercise of judgment or discretion, the failure to follow that statute has been considered a ministerial act in certain contexts. While this is a novel argument in the context of interest abatement, petitioners have failed to identify a statute that respondent's officers or employees failed to follow. Moreover, we are not persuaded that failure to apply the law as instructed by a superior or Tech Advisors is a ministerial act. Decisions about how to apply advice require use of judgment and discretion. Accordingly, the actions petitioners identified were not ministerial. See sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., supra.

Petitioners allege that Agent Smith made six "ministerial" errors over the course of her audit. Five of the six errors, however, concern the proper application of Federal tax law. To be thorough, we list all five errors: (1) determining that an S corporation election was not properly abandoned by petitioners, (2) the disallowance of a tax-free corporate reorganization, (3) the double reporting of a $1,039,000 money option, (4) a $13 million increase from petitioners' TEFRA partnership, and (5) a $110 million valuation on a distribution to petitioners that was essentially worthless. Each error cited concerns adjustments to petitioners' tax liabilities which necessarily required the exercise of judgment or discretion in

[*20] applying Federal tax law. It is well settled that a decision concerning the proper application of Federal income tax law necessarily requires the exercise of judgment and discretion. Corson v. Commissioner, 123 T.C. 202 (2004); Urbano v. Commissioner, 122 T.C. 384 (2004); Katz v. Commissioner, 115 T.C. 329 (2000); Hawksley v. Commissioner, T.C. Memo. 2000-354; Jacobs v. Commissioner, T.C. Memo. 2000-123; see sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., supra.

Respondent concedes that many of Agent Smith's adjustments in Forms 4549A-CG were incorrect, but that most of those were conceded early during the audit once petitioners had provided additional substantiation. Petitioners owe no interest attributable to any of the erroneous adjustments. Interest applies only to the deficiency amounts that petitioners agreed they owed by signing the stipulated decision documents. Thus, there is no interest to abate attributable to Agent Smith's errors.

The sixth error petitioners cite is Agent Smith's determination that petitioners maintained a "lavish lifestyle". This determination is inherently a product of Agent Smith's judgment and is thus not ministerial.

Petitioners argue that these errors effectively "tainted" their entire case from the start in September 1995 through to February 2011 when stipulated decisions

**[\*21]** were entered and that these errors should be considered ministerial. However, "regardless of whether respondent correctly or incorrectly determined petitioner's income tax liabilities for those years, it is clear that a decision concerning the proper application of Federal tax law, or other Federal or State law, is not a ministerial act." Hawksley v. Commissioner, slip op. at 21. Thus, respondent lacked discretion to abate interest for errors that were not ministerial for the years at issue.

Second, petitioners urge this Court to adopt a "grossly unfair" exception to section 6404, citing legislative history.[12] Section 6404(e), however, expressly limits the Commissioner's discretion to abatement of interest due to "ministerial acts" performed by IRS officers or employees. As discussed, the governing regulation defines the term to mean "a procedural or mechanical act that does not involve the exercise of judgment or discretion". Sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., supra.[13] The regulation further provides that

---

[12]"Congress did not intend for section 6404(e) to be used routinely; * * * only 'where failure to abate interest would be widely perceived as grossly unfair.'" Hawksley v. Commissioner, T.C. Memo. 2000-354, slip. op at 8 (quoting Lee v. Commissioner, 113 T.C. 145, 149 (1999)); H.R. Rept. No. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844; S. Rept. No. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208).

[13]The definition of "ministerial act" closely tracks the legislative history of

(continued...)

**[\*22]** a decision concerning the proper application of Federal tax law is not a ministerial act. Id. Moreover, amendments of section 6404 and petitioners' own exploration of the term "ministerial act" strongly buttress adherence to the plain meaning of the text.

Petitioners argue that "[w]ithout question, this is such a case" where failure to abate interest would be widely perceived as grossly unfair. However, we must abide by the fundamental tenets of statutory construction, and, in addition, the facts of the case at hand fall short of supporting an argument for a "grossly unfair" exception. As is evidenced by the record, petitioners significantly contributed to any error or delay that occurred by failing to adequately maintain and supply records as requested.

In the same sentence in which Congress expressed an intent that section 6404(e) prevent a "grossly unfair" result, Congress denied the use of section 6404(e) for the avoidance of interest payment. H. Rept. No. 99-426, supra at 844, 1986-3 C.B. (Vol. 2) at 844; S. Rept. 99-313, supra at 208, 1986-3 C.B. (Vol. 3) at 208. By arguing that Agent Smith's actions "tainted" their entire case, petitioners are essentially seeking to be put in the place they would have been in had they

---

[13](...continued)
sec. 6404(e). See Lee v. Commissioner, 113 T.C. at 149-150.

[*23] correctly reported their income and timely paid the tax due.  In addition, petitioners and their representatives played a major role in delaying the resolution of their liabilities for the tax years at issue.  Thus, respondent did not abuse his discretion when he found no ministerial error.

As a final argument, petitioners contend that Agent Smith "was a rogue agent who apparently believed, or created an illusion that she was uncovering the masterful deceit of a major tax cheat" and that she acted in bad faith.  The record shows that petitioners' case involved multiple entities with complex structures and inadequate records.  We find no evidence that Agent Smith acted in bad faith.

Before deciding whether petitioners are entitled to abatement, we will also look in detail at each specified period.

1.  <u>November 1999 Through October 2000</u>

Petitioners argue that delay in issuing the second 30-day letter was a result of ministerial error.  After asking for numerous extensions of time to file protest letters, petitioners eventually protested respondent's 30-day letter on August 11, 2000.

Petitioners have failed to identify a ministerial error that correlated with this time period.  The mere passage of time does not establish error or delay in performing a ministerial act.  <u>Lee v. Commissioner</u>, 113 T.C. at 150.  Further,

[*24] assuming a delay or error occurred, it could only be taken into account if no significant aspect of such error or delay could be attributed to petitioners. See sec. 6404(e)(1). Petitioners significantly contributed to any delay that occurred from November 1999 through October 2000.

2. October 2000 Through January 28, 2002

Petitioners argue interest should be abated from October 2000 to January 28, 2002, because (1) Agent Smith allegedly "issued her * * * [Forms 4549A-CG] prematurely" and (2) the Appeals record is allegedly silent for this period. As to the first point, petitioners speculate that premature issuance of the 30-day letters was a ministerial error of opening additional years while preparing the Forms 4549A-CG or was due to the five alleged ministerial errors explained, and dismissed, above.

The issuance of a notice of deficiency may be a ministerial act, and the Commissioner may, in his discretion, abate interest attributable to delay in issuing the notice. See sec. 301.6404-2T(b)(2), Example (2), Temporary Proced. & Admin. Regs., supra. Here, there was no delay in the issuance of the 30-day letter. Because there was no delay respondent lacked discretion to abate interest attributable to such exercise for the remaining tax years at issue. As an aside, we

**[*25]** note, it would be ironic if petitioners could assert error because respondent attempted to expedite the case by issuance of the 30-day letter.

Petitioners' second point, that they should be entitled to interest abatement because the record is silent for this period, is contradicted by the evidence. A letter from Mr. Saddington shows that Officer Hamm requested information that he did not timely provide because of other litigation he was involved in and because of petitioners' moving of records.

For this period, petitioners have not shown that respondent's officers or employees made any ministerial errors. Petitioners significantly contributed to any delay that occurred. Thus, respondent did not abuse his discretion in denying interest abatement for this period.

3. <u>January 29, 2002, Through June 5, 2003</u>

From January 29, 2002, through June 5, 2003, petitioners' case had been returned to Agent Smith from Appeals for further development. Petitioners argue that they are entitled to abatement of interest for this period because of "ministerial confusion" involving the assignment of their case and because of Agent Smith's errors in making various determinations and allegedly ignoring advice. Petitioners also argue that not giving their case priority immediately upon return from Appeals was ministerial error or delay.

**[\*26]** During this period, petitioners' case was moved from Las Vegas, Nevada, to Laguna Niguel, California, where petitioners were currently residing. The record indicates Agent Smith's manager and respondent's management in California decided where the case should be transferred. This was a managerial, not a ministerial, decision and in any event does not appear to be in error. <u>Woodral v. Commissioner</u>, 112 T.C. at 25; <u>Sandberg v. Commissioner</u>, T.C. Memo. 2011-72, slip op. at 12; <u>see</u> sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., <u>supra</u>.

Petitioners did not identify any ministerial errors by Agent Smith from January 31, 2002, through June 5, 2003. Agent Smith's decisions about which adjustments were appropriate and how to apply advice she received required her judgment and discretion. Lastly, deciding how and when to work on cases, on basis of an evaluation of the entire caseload and workload priorities, is not a ministerial act. <u>See</u> <u>Mekulsia v. Commissioner</u>, T.C. Memo. 2003-138 (citing <u>Jean v. Commissioner</u>, T.C. Memo. 2002-256), <u>aff'd</u>, 389 F.3d 601 (6th Cir. 2004). Thus, interest abatement for this period would be inappropriate.

### 4.  <u>June 5, 2003, Through April 3, 2004</u>

Petitioners argue that during this period their case should have been sent to Appeals or a statutory notice of deficiency should have been issued more

[*27] expeditiously.  The record indicates that the case was returned to Appeals in January 2004.

During this period the record shows that respondent was actively working on petitioners' case.  The mere passage of time does not establish error or delay in performing a ministerial act.  Lee v. Commissioner, 113 T.C. at 150.

Petitioners also argue that during this period "delays continued due to and based upon the same vindictive ministerial errors that occurred and resulted from Agent Smith's initial declaration about a lavish lifestyle."  Petitioners have not shown that respondent's officers or employees made any ministerial errors for the period from June 5, 2003, to April 3, 2004.

5.  April 4, 2004, Through December 31, 2004

During this period petitioners met with Officer Anderson in an attempt to reach a settlement.  The record indicates that a fair amount of progress was made toward reaching a resolution; however, no settlement was officially agreed upon.  The progress made was abandoned when Officer Anderson retired and Officer Hales took over.  Petitioners argue that Officer Hales' failure to pick up where Officer Anderson left off was ministerial error.

Petitioners' argument is not supported by law.  Petitioners have not identified any ministerial act by either officer.  Officer Hales' decision regarding

[*28] how to resolve petitioners' case necessarily required the exercise of judgment or discretion. These acts were a prerequisite to processing a settlement agreement between petitioners and respondent. See Goettee v. Commissioner, T.C. Memo. 2003-43, aff'd, 192 F. App'x 212 (4th Cir. 2006).

6. January 2005 Through September 27, 2005

Petitioners and Officer Hales held several meetings in Appeals during this period. Petitioners reiterate that the alleged ministerial errors made by Agent Smith should cause interest to be abated during this period. Petitioners contend that these errors cause the Appeal proceeding to have "no merit or substance". Petitioners, however, fail to identify any ministerial error during this period. In addition, it is well documented in the record that during this time petitioners postponed numerous meetings with Officer Hales. Thus, respondent did not abuse his discretion in denying interest abatement for this period.

7. September 27, 2005, Through March 21, 2006

Appeals conferences ceased on September 27, 2005, and Officer Hales subsequently prepared a statutory notices of deficiency. The first notice of deficiency was issued on March 21, 2006, six months after the Appeals conferences ended. Petitioners correctly state that the act of issuing a statutory notice of deficiency does not require use of judgment or discretion and is thus a

[*29] ministerial act. <u>Corson v. Commissioner</u>, 123 T.C. at 208. During this period, however, the record indicates that Officer Hales regularly worked to prepare all three notices of deficiency. His work during this period is further evidenced by the substantial adjustments he made to petitioners' tax liabilities for tax years 1992 through 1996. Thus, there was no delay in the issuance of the first notice because the prerequisites to that act, the preparation of and additional adjustments to the notice, had not been completed. <u>See</u> <u>id.</u> Respondent did not abuse his discretion by not abating interest for this period.

     8.  <u>March 2006 Through February 2, 2011</u>

From March 2006 through February 2011, petitioners' cases were docketed in this Court. Petitioners argue that "the ministerial errors from 1995 continued to color this docketed case right through negotiation and settlement, interest should be abated for the entire time that the docketed cases were negotiated." In 2006 respondent issued petitioners three notices of deficiency. Petitioners filed petitions to challenge them. Respondent took no other action.

From June 2006 through 2011, respondent and petitioners were engaged in the litigation of petitioners' income tax liabilities. Any decision by respondent's counsel "on how to proceed in the litigation phase of the case necessarily required the exercise of judgment and thus cannot be a ministerial act." <u>Swanson v.</u>

**[*30]** <u>Commissioner</u>, T.C. Memo. 2010-131, slip op. at 13 (quoting <u>Lee v.</u> <u>Commissioner</u>, 113 T.C. at 150-151).

Petitioners have not shown that respondent's officers or employees made any ministerial errors during this period.

E. <u>Conclusion</u>

Consistent with our analysis, we hold that respondent's denial of petitioners' claim for abatement of interest was not an abuse of discretion.

The Court has considered all arguments the made by the parties, and to the extent not specifically addressed herein, has concluded that they are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.